[Criminal No. 580.　Filed October 15, 1923.]

[218 Pac. 981.]

# W. H. BRITT, Appellant, v. STATE, Respondent.

1. CRIMINAL LAW—REFUSAL TO STRIKE OUT WITNESS' ANSWER HELD ERROR.—It was error to refuse to strike answer of witness. "The facts were I had good cause to believe he was selling liquor," since the witness' belief was a mcre conclusion which might be founded on facts irrelevant to the question of accused's guilt of the charge in question.

2. WITNESSES—UPON ACCUSED'S DENIAL OF SALE OF LIQUOR, HIS TESTIMONY COULD BE IMPEACHED BY INCONSISTENT STATEMENTS.— Where accused denied he sold liquor, no legal objection to impeaching questions as to inconsistent statements existed.

3. CRIMINAL LAW—PROSECUTING ATTORNEY'S REMARKS HELD DISRESPECTFUL TO COURT AND PREJUDICIAL TO ACCUSED.—Where the court refused to permit prosecuting attorney to ask accused whether the latter had not admitted to the prosecuting attorney that he (accused) sold liquor, unless the prosecuting attorney disclosed his intention to take the stand as a witness, prosecuting attorney's remarks, "It is a funny state of affairs if a man can come to the county attorney and tell him how he committed the crime . . . " *held* disrespectful to the court and harmful to accused.

4. CRIMINAL LAW—LANGUAGE OF PROSECUTING ATTORNEY TO JURY, NOT OBJECTED TO AT TRIAL, MAY NOT BE ASSIGNED AS ERROR ON APPEAL.—Where the language of the prosecuting attorney was not objected to during the argument, the language could not be assigned as error on appeal.

APPEAL from a judgment of the Superior Court of the County of Maricopa.　M. T. Phelps, Judge. Judgment reversed, with directions.

1.　Complaint or information based on relief as basis for issuance of warrant or for examination preliminary thereto, see notes in 10 L. R. A. (N. S.) 159; 25 L. R. A. (N. S.) 60.

3.　Misstatements of actions or statement of actions not in evidence, by counsel in argument to jury, as ground for reversal, see notes in 46 L. R. A. 641; L. R. A. 1918D, 4.

See 16 C. J., pp. 880, 913; 17 C. J., p. 60; 40 Cyc. 2690.

Messrs. Cox & Moore, for Appellant.

Mr. John W. Murphy, Attorney General, and Mr. A. R. Lynch, Mr. Earl Anderson and Mr. E. W. McFarland, Assistant Attorneys General, for the State.

PER CURIAM.—Appellant was convicted of selling intoxicating liquors to one John Bart, at Wickenburg, Maricopa county. He was sentenced to serve six months in the county jail and to pay a fine of $150. He appeals, assigning several errors, some of which we think are meritorious. We notice only those that we consider well taken.

The defendant is a barber, and at the time of the alleged sale (March 22, 1923) had a barber-shop at Wickenburg. The only eye-witness to testify to the alleged sale was Edward Devanney, a deputy sheriff and constable of Wickenburg precinct. Devanney employed John Bart, who was a stranger in Wickenburg, to go to appellant's barber-shop and see if he could buy some whiskey. After Bart had been in the shop awhile, Devanney opened the door and saw Bart with a bottle of whiskey in his hand. Bart turned to Devanney and handed the bottle of whiskey to him, saying that he got it from appellant and paid $3.50 for it. Devanney arrested appellant and took him before the justice of the peace of Wickenburg precinct, where further proceedings were had. Whether a preliminary was held or not the record does not show. It is shown, however, that he gave bail to appear before the superior court. Bart was not a witness at the trial.

While the prosecuting witness, Edward Devanney, was testifying, it having been shown that he was the arresting officer, Assistant County Attorney La Prade asked him this question: "What were the facts surrounding that arrest or leading up to it?" To which the witness answered: "The facts were I had good

cause to believe he was selling liquor." Appellant's attorney moved that the answer be stricken on the ground that it had nothing to do with the issues and was prejudicial. The court permitted the answer to stand, stating, "It is merely to show an inducement as to why he went there." Thereupon the question was asked: "Well, having that idea in mind, what did you do on it?" Over defendant's objection this was permitted to be answered, the witness stating, "I had a case of selling whiskey to a neighbor." This answer, on motion of appellant's attorney, was very properly stricken, and the jury was advised to disregard it.

The answer to the first question was quite as inadmissible and incompetent as were the second question and answer thereto. The witness' "belief" was not evidentiary, and whether it was based upon "good cause" might depend largely upon his ability to distinguish facts from fancies. However, when he was permitted to descend to details, he instanced a particular sale of liquor to a neighbor, and in doing so he might just as well have told the jury he believed appellant was the person who sold liquor to his neighbor, and that bootlegging was his business.

To permit an arresting officer to state to a jury that he had "good cause to believe" the defendant guilty of the crime with which he is charged naturally would arouse the curiosity and suspicion of the jury. If the officer is allowed to give the grounds of his belief, it opens the door to all kinds of information —hearsay and otherwise. And if he is not permitted to state the cause of his belief, it leaves the jury a fruitful field in which to conjecture and speculate, and frequently would be more damaging than if the officer stated the reasons for his belief.

We think the court clearly committed error in refusing to strike the witness' answer. *Jones* v. *State,* 30 Tex. App. 426, 17 S. W. 1080; *Prince* v. *State* (Tex.

Cr. App.), 20 S. W. 582. His belief was a mere conclusion and might be founded on facts entirely irrelevant to the question of defendant's guilt of the present charge.

The next complaint is as to the misconduct of the assistant county attorney. This assignment is based upon the questions and answers, rulings of the court, and remarks of the assistant county attorney during the cross-examination of defendant, as follows:

"Q. And do you recall that you led me off to one side and talked to me? A. Yes, sir.

"Q. I will ask you if it is not a fact that you told me in effect that you just started this. A. No, sir; I did not.

"Q. Didn't you tell me in effect—

"The Court: Just a minute, Mr. La Prade. You say he took you off to one side. Is it your purpose to take the witness-stand in the case? If you are trying to show a statement in the presence of somebody, you may do it; otherwise I won't permit it.

"Mr. La Prade: It is a funny state of affairs if a man can come to the county attorney and tell him how he committed the crime—

"The Court: Are you going to take the witness-stand?

"Mr. La Prade: I don't think that should be anticipated as to whether I am going to take the stand or not.

"Mr. Cox: We object to the remarks of counsel that he told him the way he committed the crime. It is improper.

"Mr. La Prade: Do I have to disclose at this time whether I intend to take the stand?

"The Court: Proceed.

"By Mr. La Prade: Q. Do you remember having told me in effect at that time and place that you had purchased five gallons and that you had only sold two of it? A. No, sir.

"Mr. Cox: Now, may it please the court, you can see the purpose of this. He is trying to bring in about something else there, absolutely reversible error.

"The'Court: I will sustain the objection to it unless you say you are going to take the stand and testify in regard to it."

Before the assistant county attorney asked the above impeaching questions, the appellant had testified denying that he had sold any liquor to Bart. In that state of the evidence, no legal objection to the impeaching questions existed. We know of no rule of law that would prevent the assistant county attorney from becoming a witness to contradict statements made to him by a defendant.

The court's purpose evidently in interrupting the cross-examination was not so much to stop the line of cross-examination as to learn if the prosecutor was acting in good faith and intended to become an impeaching witness. The court's efforts were fruitless, but afforded an opportunity for the prosecutor to make most damaging statements against the accused. We do not think the jury could tell from what was said by the court whether the impeaching questions and answers were stricken or not. Strictly speaking, it was not necessary that the prosecutor disclose at the time whether he intended to take the stand. But we think fairness and candor with the court demanded that he state his intention. Apparently it was the prosecutor's impatience with the court, and not anything that counsel for appellant had said or done, that caused him to make the very damaging statement:

"It is a funny state of affairs if a man can come to the county attorney and tell him how he committed the crime—"

Of course, this was uncalled for, disrespectful to the court, and must have been harmful to the appellant.

Akin to the foregoing assignment of error is one that occurred during the progress of the argument

to the jury, which has a tendency to shed light upon and illustrate more fully the seriousness of the misconduct of the prosecutor. It is as follows:

"Mr. La Prade: . . . And if a fellow comes to the county attorney and tells him how he committed it, then the county attorney is precluded from testifying, getting on the witness-stand and testifying.

"Mr. Cox: We object now to what counsel says about what the defendant told him. It is unfair to the defendant here and not proper argument.

"The Court: I will sustain the objection with reference to any argument which refers to evidence that was not permitted to be introduced under the ruling of the court."

From this ruling, it is difficult to say just what the court intended to take from the consideration of the jury. The prosecutor had asked impeaching questions of the appellant, as he had a right to do under the rules of evidence. The court had threatened to stop such cross-examination unless the questioner signified whether he was going upon the stand to controvert appellant's answers. When, in his argument to the jury, the prosecutor stated that he was "precluded from testifying, getting on the witness-stand and testifying," and the court ruled out "any argument which refers to evidence that was not permitted to be introduced," the jury was doubtless at a loss to understand what they were to consider.

The following utterance of the prosecutor in his argument to the jury is also assigned as error:

"I know the defendant is a bootlegger; the defendant knows he is a bootlegger, and defendant's counsel knows that I know that the defendant is a bootlegger."

This language was not excepted to during the argument, and therefore the court had no opportunity to pass upon it. Under the rules it is not properly before us for consideration, and we give it only for

the purpose of showing the unfair and oppressive conduct of the prosecutor.

Another sample of the unfair tactics of the prosecutor is a question propounded to a witness, who had testified to a conversation that he had with appellant. The question was:

"By the fact that he came and talked to you that way, what was your idea on it; that he was guilty or innocent?"

This question was ruled out and the witness not permitted to answer.

It is apparent from the above excerpts from the record that the prosecutor manifested unusual zeal and adopted tactics so irregular and improper that the result must have been harmful to the appellant. Whether what was said could have been corrected by the court, if he had been more direct and positive in his rulings, may be questioned. If prosecutors were a little more careful and orderly in the presentation of criminal cases, or if the court would act more promptly in curbing their zeal and anxiety to secure convictions, regardless of the rules of law, it would save this court the disagreeable duty of reversing after conviction.

In *Commonwealth* v. *Shoemaker,* 240 Pa. 255, 87 Atl. 684, the district attorney, in his argument to the jury, stated his own knowledge of certain facts in the case without being sworn as a witness. The court in passing upon the same said:

"No matter what version we may accept, the remarks of the district attorney were highly objectionable and likely to prove prejudicial to the defendant. 'It is error for counsel . . . to state . . . his own knowledge of facts unless he has testified thereto as a witness, . . . or to insinuate that he has knowledge of facts which are calculated to prejudice the opposite party.' 38 Cyc. 1496.

" 'The district attorney is a *quasi*-judicial officer. He represents the commonwealth, and the commonwealth demands no victims. It seeks justice only, equal and impartial justice, . . . Hence, he should act impartially. He should present the commonwealth's case fairly, and should not press upon the jury any deductions . . . that are not strictly legitimate. When he exceeds this limit . . . he is no longer an impartial officer . . . ' *Commonwealth* v. *Nicely,* 130 Pa. 261, 270, 18 Atl. 737, approved in *Commonwealth* v. *Bubnis,* 197 Pa. 542, 550, 47 Atl. 748.' "

In another case, *Holder* v. *State,* 58 Ark. 473, 25 S. W. 279, the rule with reference to the duty of a prosecutor is so well stated that we quote as follows:

"The action of the attorney for the state was highly reprehensible. A prosecuting attorney is a public officer, 'acting in a *quasi*-judicial capacity.' It is his duty to use all fair, honorable, reasonable and lawful means to secure the conviction of the guilty who are or may be indicted in the courts of his judicial circuit. He should see that they have a fair and impartial trial, and avoid convictions contrary to law. Nothing should tempt him to appeal to prejudices, to pervert the testimony, or make statements to the jury which, whether true or not, have not been proved. The desire for success should never induce him to endeavor to obtain a verdict by arguments based on anything except the evidence in the case and the conclusions legitimately deducible from the law applicable to the same. To convict and punish a person through the influence of prejudice and caprice is as pernicious in its consequences as the escape of a guilty man. The forms of law should never be prostituted to such a purpose."

In *Watson* v. *State,* 7 Okl. Cr. 590, 124 Pac. 1101, the court reviewed at length many of the cases wherein the misconduct of the prosecuting officer was assigned as the basis for a reversal, and closes the opinion with this language:

"Upon a careful consideration of this record, we are impelled to the conclusion that the accused did

not have a fair and impartial trial. We again warn the trial courts and prosecuting attorneys in this state that they must conduct the trials of criminal cases in a fair and impartial manner and according to the rules of law. The public is entitled to an impartial enforcement of its penal statutes. In the interest of the law-abiding public, this court has used every reasonable means to uphold judgments of conviction when in good conscience it could so do. But the aversion of this court to reversing judgments of conviction must not be understood by the trial courts and the prosecuting attorneys as a license to disregard the rights of persons on trial accused of crime. The trial of criminal cases must be conducted according to law. When the record discloses that a trial has been unfair, as the record in this case does, a judgment of conviction cannot be upheld, although this court, with reluctance, is forced to award a new trial at the expense of the people.''

This language we appropriate, and wish to emphasize that we shall in the future, as in the past, endeavor to uphold judgments of conviction when in conscience it can be done. Counsel, however, must not expect the court to affirm judgments secured by tactics that are unlawful and unfair.

The judgment is reversed, with directions that a new trial be granted.