**237 P.2d 803**

**STEWART v. SMITH et al.**
**No. 5310.**

Supreme Court of Arizona.
Nov. 14, 1951.

Croaff & Croaff and Charlie W. Clark, all of Phoenix, for appellant.

Wilson & Wilson, of Phoenix, for appellees.

STANFORD, Justice.

This is an action to recover on a contract for the drilling of a well and foreclosure of a mechanic's lien to secure payment therefor. The original complaint and a counterclaim were filed in 1946 and judgment was thereafter rendered for defendants (Smiths, who are appellees herein) and against plaintiff (Stewart, who is ap-

pellant herein) on both complaint and counterclaim. The defendants, Smiths, were awarded the sum of $2400 as reimbursement for overpayment on the contract. Appeal was then taken to this court, decision reported in Stewart v. Smith, 68 Ariz. 91, 200 P.2d 353, 358. From the final paragraph of the opinion, we quote: "The judgment is reversed and the cause remanded to the trial court with directions (a) to dismiss the tort action set forth in the counterclaim based upon the alleged negligence of Stewart, and (b) to grant a new trial upon the contract issue raised by Stewart's complaint and Smith's answer and the issue of overpayment presented by the counterclaim." This decision established the law of the case.

The second trial was then held and judgment rendered for defendants on the complaint and for plaintiff on the counterclaim, each party to bear his own costs. From that judgment and a denial of motion for a new trial, plaintiff now appeals.

The facts of the case as well as the issues on retrial are rather fully stated in our former opinion. The main issue on retrial concerned the type of formation encountered in the drilling of the well, that being determinative of the rate to be charged, defendants contending that payments made to plaintiff had resulted in an overpayment and plaintiff contending that the nature of the formation through which he drilled had resulted in a balance owed him by defendants.

Plaintiff makes seven assignments of error, the first three of which assign error to court's permitting counsel for defendants to ask questions, and witnesses to give answers touching on matters foreign to the issues, namely: plaintiff's negligence in his performance under the contract, which was specifically eliminated from the trial by the previous appeal, all of which allegedly unduly prejudiced the plaintiff. Supporting these assignments, plaintiff has cited no less than twenty-five instances where counsel for defendants pursued a line of questioning, while examining various witnesses, which allegedly touched upon and resulted in answers indicating that plaintiff was guilty of negligent misconduct while drilling the well. Matters were touched upon dealing with the alleged discovery of water in the well, prior to its abandonment by plaintiff, carrying with it an innuendo of failure on the part of plaintiff to make the same available for use by defendants. This was entirely irrelevant and beyond the issues of the case. At various times during the course of the trial, certain matters were emphasized regarding the "sticking" of plaintiff's tools in the well, implying therefrom that plaintiff had destroyed the well, to defendants' detriment.

Although the specific rulings by the trial court on the objections interposed were on the whole correct, a careful scrutiny of the entire proceedings reveals an atmosphere, threaded with off-color remarks, directed

at plaintiff's negligent misconduct in drilling, and strongly prejudicial to his interests. From 20 R.C.L., New Trial, section 20, we quote: " * * * If, in the examination of witnesses, irrelevant evidence of collateral matters is brought before the jury for the purpose of or tending to prejudice the jury against the opposite party, a new trial will be granted, * * *. So, it will constitute ground for a new trial if counsel, in disregard of the court's ruling that a certain line of evidence is inadmissible, persists in attempting to get such evidence before the jury, to the prejudice of the unsuccessful party. * * * " See also Britt v. State, 25 Ariz. 419, 218 P. 981; Silver King of Arizona Mining Co. v. Kendall, 23 Ariz. 39, 201 P. 102. And from 5 C.J.S., Appeal and Error, § 1713(b), we quote: " * * * the case must be reversed * * * for misconduct in asking questions conveying improper information to the jury and tending to render the trial unfair, persistently injecting irrelevant evidence into the case, or asking questions in defiance of the court's rulings or in violation of stipulations made by counsel. So, notwithstanding instructions of the court to the jury to disregard the objectionable questions, the case must be reversed where the questions were highly inflammatory and apparently influenced the jury in making up their verdict."

We are of the opinion that the prejudice thus created was of such magnitude and severity that it could not have been, nor was it corrected by a mere sustaining of an objection or an instruction to the jury that the remark be disregarded. For the foregoing reasons we feel that discussion of the remaining assignments is unnecessary. We are of the opinion that the proceedings of the trial in the lower court were of such a nature that they resulted in serious prejudice to the plaintiff and in effect denied him a fair trial. We therefore direct that the judgment of the lower court be reversed and the cause remanded for a new trial.

UDALL, C. J., and PHELPS and LA PRADE, JJ., concurring.

DE CONCINI, Justice (dissenting).

This case has been twice tried in the lower court and twice appealed. The majority opinion now sends it back for its third trial. I believe that is error for the following reasons:

The opinion of this court on the first appeal, 68 Ariz. 91, 200 P.2d 353, 358, said: "The judgment is reversed and the cause remanded to the trial court with directions (a) to dismiss the tort action set forth in the counterclaim based upon the alleged negligence of Stewart, and (b) to grant a new trial upon the contract issue raised by Stewart's complaint and Smith's answer and the issue of overpayment presented by the counterclaim." which the majority now adopt as the law of the case.

From a reading of that it can be seen that Smith's counterclaim on his tort action for negligence was not to be considered on

a retrial of the case. However, the opinion did not take away Smith's defense against Stewart, for losing his tools in the well and leaving Smith with a worthless well. Had Stewart drilled a hole of a depth to whatever the parties agreed upon and turned it over to Smith in accordance with the custom of drillers in this vicinity, Smith would have no ground to complain, but such was not the case. It is my opinion that Stewart's drilling a well for Smith and leaving some 2,000 pounds of tools stuck in the hole which made it worthless, entitled Smith to present his defense in an action by Stewart for payment therefor.

I think both the trial court and the majority opinion do not distinguish between Smith's tort action for negligence and his defense to Stewart's complaint.

I have read the 18 instances complained of by appellant in the transcript of testimony. I can find no improper conduct on the part of Smith or his attorney in endeavoring to bring forth the true picture of what occurred. It is true that mention was made several times that water had been struck at the 396-foot level and the inference was that through Stewart's negligence the water had been lost. The evidence in the first trial corroborates those inferences.

Quoting from the decision of the first appeal, we find the following: "In order for Smith to recover damages for the alleged negligence of Stewart it was necessary for him to prove, by a fair preponderance of the evidence, three things: (1) That Stewart had struck a vein of water in the drilling operations, (2) that the flow of water thus found had been destroyed through the negligence of Stewart, and (3) that such negligence was the proximate cause of the damages he (Smith) had suffered. We first treat the proof adduced to support Smith's first contention. Stating the facts in the light most favorable to Smith, the prevailing party, it is apparent that on the matter of discovering water he relies upon these things: (a) Stewart's statements made about December 1, 1945, to him and others that he had struck water and plenty of it at the 396 foot level, that it was coming in with such force it was washing in pebbles, and that Stewart then demonstrated he had water by bailing out some eleven bails of it (the evidence does not disclose the quantity of water measured in gallons); and (b) that water had been found in wells drilled by Harold Baxter, Bob Evans and Frank Lloyd Wright on their ranches some one and a half to four miles distant." and the testimony of one Wheeler, Smith's witness: "' * * * He said that all those pebbles and rocks that were washing in with the water were getting alongside of his drill and making it stick so he said he would have to pour cement in there in order to keep those pebbles out; otherwise there would (be) danger of sticking his bit and not being able to get it out. I asked him if there wasn't some possibility of sealing up the water; and he said, "Yes, there was some." But

he didn't think it was very great. And he said he would take a chance.' "

It is apparent there was evidence that water had been struck. From the jury's verdict in the first trial it is evident they believed Smith's witnesses. This court is not the triers of facts and should uphold the lower court's judgment when there is evidence to sustain it.

If there was any error it was in the lower court's striking part of Smith's answer, and sustaining objections to Smith's testimony in regard to nonperformance by Stewart. In spite of those errors the jury for the second time decided in favor of Smith.

The judgment should be affirmed.