[Criminal No. 909. Filed January 12, 1942.]

[120 Pac. (2d) 798.]

# THE STATE OF ARIZONA, Appellee, v. ARTURO GUERRERO, Appellant.

Mr. Joe Conway, Attorney General, Mr. Albert M. Garcia, Assistant Attorney General, Mr. Richard F. Harless, County Attorney, and Mr. Darrell R. Parker, Deputy County Attorney, for Appellee.

Messrs. Cox & Cox and Mr. Herbert Watson, for Appellant.

ROSS, J.—From a conviction of forcible rape upon one Lorraine Malone on or about the 31st day of August, 1940, in Maricopa County, and a sentence to

the penitentiary for from 30 to 35 years, the defendant, Arturo Guerrero, has appealed.

Much of his brief is devoted to an attack upon the sufficiency of the evidence to support the verdict. Under his plea of not guilty he undertook to prove an alibi, which implies he was not present when the alleged act took place and therefore did not commit it. The evidence on this issue was in sharp conflict. The jury believed the evidence of the state's witnesses and not that of the defense. We accept the verdict of the jury.

No purpose can be served by recording here the sordid details of the crime. Suffice it to say that said details do no credit to either the prosecuting witness or the defendant. The prosecuting witness, with a juvenile court history, on such day had been visiting different bars and imbibing intoxicants rather freely and when she, along towards eleven o'clock at night, could not longer take care of herself, the defendant, with a man by the name of Charles Williams and several Mexican boys, took her into defendant's automobile and drove to South Mountain Park, about six or seven miles from Phoenix, and while she was still in a half stupor the defendant committed the act or acts charged.

In considering the alleged errors of the trial we must assume the jury was composed of men of average experience and intelligence and that they acted upon what the court by its rulings regarded as competent evidence and not upon what counsel may have claimed to be the evidence. The transcript of the testimony is very long, consisting of 993 pages of typewritten matter. The defendant's opening brief is 183 pages long and to its length must be added quite an extensive brief for the state and defendant's reply thereto. Much of what is called to our atten-

tion consists of unpleasant remarks and disputes of counsel directed towards each other, and much of it is made up of matter that should never have gone into the record.

The county attorney in his opening statement to the jury said, in effect, that Charles Williams and his associates had lured the prosecuting witness' husband into a poker game and the wife to the South Mountains for the purpose of raping her. This statement is assigned as error. We think the interpretation of the evidence given by the county attorney, under the circumstances, is a reasonable and fair statement.

The county attorney in his argument to the jury called their attention to the fact that the evidence showed defendant, after his arrest, had escaped from the officers and remained at large about two months and when rearrested had a loaded pistol, ammunition, lamp black, a mask and two pairs of colored glasses on his person. Defendant insists that this evidence was "for the purpose of arousing prejudice against defendant on account of another crime alleged to have been committed." Proof of flight is always competent.

"The flight *of* concealment of accused raises no presumption of law that he is guilty; but it is admissible in evidence as a fact which may be considered by the jury, and from which they may draw an inference, in connection with other circumstances and in the absence of an explanation of the reasons or motives which prompted it, that he is guilty; and this is true whether the other evidence of guilt is direct or circumstantial. For the same purpose the events and circumstances connected with the flight of accused are equally admissible. The law makes no nice or refined distinction as to the manner or method of a flight; it may be open, or it may be a hurried or concealed departure, or it may be a concealment within the jurisdiction. . . . "

■ 16 C. J. 551, sec. 1063; 22 C. J. S., Criminal Law, § 625.

and certainly counsel for the state can comment on it, pointing out its significance.

■ It is said the above-alleged errors, perhaps standing alone, would not justify a reversal but that the camel's back was broken when the county attorney, in his final argument, "pictured the prosecuting witness as a quiet, simple, dutiful wife, living in a happy home, true to a husband, and ruthlessly dragged from these surroundings to the brush and brambles of South Mountains by a fiend who took advantage of her innocence and confidence." This picture may have been a bit overdrawn, but the jury, being of average intelligence, would not be misled thereby.

■ Exception is taken to "slighty remarks" addressed to the defense by the county attorney. There are a good many of such remarks in the record by both counsel. On that point we will have to rule it is "tit for tat."

■ State's Exhibit O for identification was a vial containing some pubic hairs. It was not introduced in evidence for the reason that the source of its contents was not shown. All reference to it was stricken on motion of defendant. The complaint is that Exhibit O was "kept before the jury during the trial, and at no time was any effort made to properly identify same or to introduce any testimony rendering same admissible." We cannot see how that fact prejudiced defendant.

■ One of the witnesses for the defense was a Mrs. Mercedes Navarro, a widow, at whose house defendant was living when the alleged crime was committed. For the purpose of showing the interest of the witness, she was asked by the county attorney if she were living with the defendant as his common-

law wife. Objection to the question was sustained. However, subsequently the defendant expressed a wish that the witness be permitted to answer it. Here counsel got into a squabble over it and it was never answered. In his argument the county attorney said, in substance, to the jury: "You know what kind of relations existed between defendant and Navarro; you can draw any kind of inference you want to." Under the circumstances, we think the court should have permitted the question to be answered when it was first asked. Interest of a witness may always be shown. 28 R. C. L. 615, section 204. If Navarro and defendant were living together, it is very probable that her testimony would be influenced in defendant's favor by that fact. That she did not answer said question in the negative is certainly not the fault of the county attorney.

▉▉ The prosecuting attorney on the cross-examination of defendant asked him this question:

"Q. Directing your attention to September 4th, up in the—up in Mr. Harless's office, in the presence of Mr. Bushong, and Mr. Maldonado, I will ask you whether or not you pulled up your pants leg, and showed certain skinned places on your knees, that your knees were skinned or abrased?"

but thereafter made no effort to prove defendant's knees were "skinned or abrased." The rule seems to be well established that a prosecutor ought not to ask such a question of a defendant without following it up with proof. *Britt* v. *State,* 25 Ariz. 419, 218 Pac. 981; *Walker* v. *State,* 23 Ariz. 59, 201 Pac. 398. The only objection to such question was, "We object to that." Such an objection is equivalent to no objection. The defendant then answered the question as follows:

"A. You asked me, didn't you, and I showed you my sores that I had on my knees, and my sores, and then you didn't want to see my groin . . . "

This answer of defendant as to the condition of his knees must have been accepted and no effort by the county attorney was thereafter made to verify or refute such explanation. We think the record shows quite plainly that the question was asked in good faith and not through any improper motive and that it was not followed up by the witnesses Maldonado and Bushong either because it was overlooked by the county attorney or because he accepted defendant's explanation. If error was committed, it was harmless under the circumstances.

Defendant complains of the court's denial of his motion to dismiss the jury and declare a mistrial because the prosecuting witness, while being interrogated by defendant on cross-examination concerning her past life, fainted and fell from the witness chair to the floor and was assisted to her feet by members of the jury. It appears that after the prosecuting attorney had closed the state's case, the defendant asked permission to recall the prosecuting witness "for impeaching questions." As a matter of fact, the inquiry of the witness was whether she had a juvenile court record, for the purpose of showing "prior unchastity." While this inquiry was being pressed, over the state's objection that it was improper and collateral, the witness fell from the stand in a dead faint. It is not questioned that she lost consciousness. She was not feigning. At that time she was 19 years old. The defendant was seeking to prove by her that when she was 14 years old she gave birth to a child. After a recess, because of her fainting, she was recalled and admitted that when she was 13 years old, and in the eighth grade, a man 30 years of age took advantage of her and became the father of her child. If the witness had been committed as a juvenile offender, the proof thereof could

easily have been shown by the court's records, or, if the records had been destroyed under the orders of the juvenile court, parol evidence of such record, if competent, could have been given, and this unfortunate girl relieved from the humiliation she was subjected to. However, it was collateral to the main issue and, if competent at all, should have been shown by the defendant in making his case. It is the general rule in forcible rape cases that prior acts of unchastity of the prosecutrix may be shown if not too remote. *State* v. *Smailes,* 51 Idaho 321, 5 Pac. (2d) 540; *People* v. *Pantages,* 212 Cal. 237, 297 Pac. 890; *State* v. *Ulmer,* 37 N. M. 222, 20 Pac. (2d) 934. In this case it appears the juvenile delinquency of which the prosecutrix was guilty occurred when she was 13 years old. This mistake of her childhood should not have been dragged into open court six years later to prove her want of chastity at the later date, for the reason it was too remote. Again, it was incompetent because of the following statute:

"*Records not to be used—Destruction.*—No record of the conviction of a child as a juvenile, nor the facts of such conviction, shall be admissible in evidence or shown in any action or proceeding of a criminal nature, except during the period for which the child has been placed on probation, or within two (2) years after discharge from an institution to which he may have been committed. The judge shall order the clerk to entirely remove and destroy the records of said proceedings after the expiration of said periods, unless it appear that prior to the expiration of said period of probation, or the expiration of two (2) years after discharge from the institution, that such person has been convicted of an offense under the laws of this or any other state. The superintendent of such institution shall notify the clerk of the court wherein the proceedings are of record when two (2) years have expired after the defendant's discharge." Sec. 46–106, Arizona Code 1939.

The juvenile record of the prosecuting witness it seems later was removed and destroyed under the direction of the juvenile court, presided over by Judge J. C. NILES, as provided by the above statute and, we will presume, properly so, no suggestion to the contrary being offered.

■ The policy of the juvenile law is to hide youthful errors from the full gaze of the public and bury them in the graveyard of the forgotten past. If the jury's sympathies were aroused by the fainting incident, it was wholly the fault of the defendant himself. In view of the court's admonition, just after it happened, to the jury "to entirely disregard that incident, and to not draw any inferences from the incident in reference to the issues in the case," we think the jury most likely heeded such directions of the court.

 It is next claimed that the court erred in overruling defendant's objections to the introduction of certain exhibits, the grounds of such objection being that they had not been sufficiently accounted for. A, B, C and D were articles of the prosecutrix' wearing apparel on the night of August 31st. She identified them and stated that they were in the same condition as when she turned them over to the officers. Exhibit G was a bag containing dirt and débris picked up from the place where the crime was committed by witness A. A. Lillard, who identified the bag; and Exhibit F was a pair of trousers turned over to the same witness about September 15th by deputy sheriff Alex Maldonado, who testified he had obtained the trousers about September 5th from defendant's room, and that defendant admitted they were his. Lillard sent these exhibits in a sealed box to Mr. Ray H. Pinker, of Los Angeles, a forensic chemist, who extracted from the prosecutrix' clothes and from defendant's trousers some dirt and testified

that the particles of dirt in the clothing and the dirt where the rape is supposed to have occurred "shows the same combination of elemental constituents" and that "it is my opinion that they are common in origin." Defendant insists that the whereabouts of Exhibits A, B, C and D, the prosecutrix' wearing apparel, was not shown for some twenty days intervening between the time such articles were turned over by the owner to the county attorney and the time they were sent to Pinker. Lillard testified that he received them from deputy county attorney Parker. According to the evidence, they were all the time in the custody of the law officers, from the time the prosecuting witness surrendered them until they reached witness Pinker, or at least there is no evidence to the contrary. The trial court felt that their possession was sufficiently accounted for to entitle them to be admitted, and we have no doubt of the correctness of the ruling.

Witness Pinker found on defendant's trousers four hairs, concerning two of which he testified:

"It is my opinion that two of the hairs which I removed from the blue trousers are similar in size, color, and microscopical characteristics to the human head hair submitted as that belonging to Mrs. Malone."

Defendant insists that such testimony of the expert Pinker is of no probative value and should not have been admitted. If the witness' testimony was more positive its validity might be questioned. We think such answer is the only one the witness could make and its weight, as in all expert testimony, was for the jury.

The defendant undertook to prove the general reputation for chastity of the prosecutrix by one Elmer (Red) Johnson. The question he put was: "Do you know her reputation, that is, what folks say,

not what you know of your own knowledge, but what folks say in reference to her reputation for chastity?" The witness answered "No, I don't know nothing about that." Counsel, being disappointed with the answer, asked this question: "I mean what people say—I am not asking you what you know—as to what people say about it." Objection being made on the ground the witness had already answered the question, the court sustained the objection. The defendant now complains because the court refused to permit his counsel by other questions to secure information the witness had said he knew "nothing about." We think it was within the discretion of the trial court whether he would permit the defendant to cross-examine his own witness or not. The usual rule is that a party may not cross-examine his own witness for the purpose of getting a more favorable or different answer to a question.

The many grievances presented by defendant's counsel that we have already considered are ample evidence of their zeal and deep interest in their client but other grievances are made, such as, the character of the county attorney's argument to the jury; the manner of the court's rulings on defendant's objections; the refusal of motion for a new trial; instructions to the jury on flight; as to resistance by the prosecuting witness; comments on evidence; corroborating testimony in rape cases, and on the presumption of innocence. We have examined all these complaints and do not take them up one by one because we find nothing in them to justify a reversal of the trial court.

■■■ As before indicated, since the trial the juvenile court division has ordered the clerk to destroy the records therein concerning the prosecuting witness. Defendant urges he should have some relief

for such disappearance but fails to suggest the kind of relief he would have. As a matter of fact, if the evidence such record contained would afford any comfort to him, he has already obtained it. The jury heard his questions put to the prosecutrix and her testimony in which she admitted she was a mother at 14, and that was all he wanted the jury to hear. At that time, under our law, she was incapable of giving consent and to say that her reputation for chastity could be impeached by such act would be a travesty on justice. Four, five or six years later, a defendant charged with forcibly raping her, cannot be exculpated on the claim that when she was 13 she was victimized by a man of 30 and became a mother out of wedlock at 14.

██ Finally, counsel for defendant have called the court's attention to its power to reduce a sentence if in its opinion the punishment is excessive (section 44–2537) and requests the court to exercise such power. The penalty of 30 to 35 years, it must be admitted, is pretty severe under the circumstances and, if this was defendant's first offense, we would be inclined to grant his prayer. But it developed in the course of the trial that he was convicted of rape in California and served 10 or 11 years of a long sentence in a prison of that state. We think the power given the Supreme Court to revise and reduce sentences imposed by the trial courts should be used with great caution and exercised only when it clearly appears a sentence is too severe. Considering that the defendant is a recidivist, we do not feel that he was excessively punished.

The judgment of the lower court is affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.