385 P.2d 700

**The STATE of Arizona, Appellee,**

**v.**

**Fred Lee OWEN, Appellant,**

**No. 1281.**

Supreme Court of Arizona.

En Banc.

Oct. 17, 1963.
Rehearing Denied Nov. 19, 1963.

Robert Pickrell, Atty. Gen., Phoenix, Norman E. Green, County Atty. of Pima County, Carl Waag, Deputy County Atty., Tucson, for appellee.

Royal, Carlson & Kaul, Tucson, for appellant.

LOCKWOOD, Justice.

This is an appeal by Fred Lee Owen from a conviction in the Superior Court of Pima County of the crime of rape.

The incident in question occurred at approximately 12:00 A.M. on February 2, 1962 in a desert area southwest of Tucson, Arizona. During the evening of February 1, 1962 the prosecuting witness had been drinking in a bar. She became involved in an argument and fight with another woman

and was beaten unconscious or nearly so from blows to her head. After the fight, one Arnold Federico (also a defendant in the action below but acquitted by the jury) and another man helped her into a car for the purpose of taking her home. Before reaching her home she asked to be taken back to the tavern to look for a shoe lost in the scuffle. Upon returning to the tavern, four other men, including appellant Fred Owen and Ruben Federico, who is an appellant in a companion case, (State v. Federico, Ariz., 385 P.2d 706), got into the back seat of the car. The prosecuting witness testified that she was then taken in the car against her will to an area in the desert in the vicinity of Peublo High School, where she was pulled from the car, thrown on the ground and her clothes were ripped off her. She then testified that her arms and legs were held while Fred Owen and Ruben Federico had sexual intercourse with her. Arnold Federico and another left the scene in Arnold's car before the raping of the prosecuting witness occurred. After the incident was over, appellant Owen and Ruben Federico together with the two other men present left the scene on foot.

A while later the prosecuting witness got up, picked up her torn clothes and walked until she came to a distant house, at which she arrived approximately one and one-half hours after the offense had been committed. Upon her arrival she was in a hysterical condition and she related the incident to the witness Aurora Ostaff, who lived in the house, and then to a police officer who arrived shortly thereafter.

Appellant makes several assignments of error. For disposition they may be grouped into five general areas: Objections to (1) admission of hearsay evidence; (2) admission of and failure properly to instruct as to an alleged confession of appellant; (3) the judge's commenting on evidence in relation to the alleged confession; (4) an instruction on flight when there was no evidence of it; and (5) refusal to allow appellant to fully cross-examine and impeach certain of the state's witnesses.

■ Appellant strongly urges that the court erred in allowing the witnesses Ostaff and Officer Charles Hall to testify to statements concerning details of the alleged rape related to them by the prosecuting witness about an hour and a half after the incident, since these statements were hearsay. No objection was raised by any of the defendants to the testimony of Officer Hall and therefore its admission may not be urged as error on appeal. The trial court, in overruling objections to allowing the witness Ostaff to relate statements made to her by the prosecuting witness on the ground of hearsay, apparently considered such statements a part of res gestae. If they were spontaneous exclamations and a part of the "circumstances which are the automatic and undesigned incidents of the particular act in issue," Keefe v. State, 50 Ariz. 293, 297,

72 P.2d 425, 427, (1937), then the court was correct in so ruling. There are various factors affecting the spontaneity of statements made to others by the victim of an offense. "Time is not the sole test for either the admission or rejection of such proof; instinctiveness is the requisite." Linton v. State, 171 Tex.Cr.R. 213, 346 S.W.2d 320, 323 (1961). There must be no break or letdown in the continuity of the transaction, but it must be before there has been time to contrive and misrepresent, and while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance, precluding afterthought or deliberate design. Cook v. Commonwealth, 351 S.W.2d 187 (Ky. 1961).[1] The fact that the statements were made to the first person met after the alleged occurrence has been particularly important in several instances. Cook v. Commonwealth, supra; Gage v. State, 159 Tex.Cr.R. 336, 263 S.W.2d 553 (1953); 19 A.L.R.2d 579.

In this case the rape occurred at night in the desert, in a spot not adjacent to many dwellings, and the prosecuting witness after finding a house with an inhabitant, seized the opportunity to complain of an assault to the first person encountered after it took place. She was crying and hysterical. A transcript of the testimony reveals that the statements which the witness Ostaff testified the prosecuting witness made to her were disjointed exclamations, complaints and pleas for help, rather than a connected narrative of the incident. The following testimony was elicited from the witness:

"Q. Will you tell us the circumstances under which you first saw her [The prosecuting witness]?

"A. Well, I was awakened by screams, and I thought I had left the television on, so, I sat up in bed and I went into the kitchen, and the light was on, and I saw someone through the window pounding on the window, on the kitchen window, so I came around and I switched on the light in the back of the house and I saw her standing there.

"Q. How was she clothed at the time?

"A. Well, she hardly had anything on, no stockings, no shoes, and just a half blue slip and a torn white sweater, and she was badly beaten, and then I told her to come in and took her into the dining room, and set her down and I went back into the bedroom to awaken my husband up and told him to get up and make some coffee, and we talked about it and he said for me to call the police.

1. In the cited case, passage of one hour's time was not considered sufficient to exclude the victim's statement from the exception under the circumstances as she was visibly nervous and excited and made complaint at first opportunity following the alleged offense. See also State v. Harrington, 171 A.2d 72 (R.I.1961); State v. Martinez, 7 Utah 2d 387, 326 P.2d 102 (1958); 19 A.L.R.2d 579.

"Q. What time was it when she came to your house, do you know?

"A. It was 1:30, because I looked at the clock and I wondered, 'My, what time it is.' I noticed it was 1:30.

"Q. What was her condition at the time you saw her?

"A. She was hysterical. She was crying, carrying on.

*   *   *   *   *   *

"Q. Tell us what she said.

"A. Well, I said, 'What happened to you?' She said, 'I have been attacked.' And she kept crying and saying 'Oh, my God; please help me.'

*   *   *   *   *   *

"Q. Did she say anything relating to how this occurred?

"A. Yes.

"Q. Or what happened?

"A. Yes, she kept piecing things together because she was so excited, I guess.

"Q. What did she say?

"A. Well, I asked her—I said, 'What happened?' And she said, 'I have been attacked.'

"Q. Did she tell you how she was attacked?

"A. Well, let's see, yes, she said that she felt like somebody hit her on the head and when she came to she said then she saw three men around.

*   *   *   *   *   *

"Q. Yes, is there anything else?

"A. She said, kept saying how awful it was.

"Q. Did she say how awful what was?

"A. They all attacked her. * * *

*   *   *   *   *   *

"Q. * * * were there any other statements?

"A. Yes, she said how she had made a mistake about going out. She should have stayed home; her mother told her to stay home.

"Q. Did she say anything else?

"A. Well, she said she had never gone through anything as terrible as that.

"Q. What other statements were made by the defendants—by Mrs. Gerritson?

*   *   *   *   *   *

"Q. Well, she said she had gone with these men and probably someone had hit her over the head and she had passed out and she said she didn't know anything about anything until she came to and they were attacking her."

■ Under these circumstances it would appear there had been no break "in the continuity of the transaction" and that, as she was still in such a state of nervous excitement, she had not yet used her reflective powers. Therefore, the trial court had a reasonable basis for admission of the testi-

mony of Mrs. Ostaff as a part of the res gestae.

■ Objection also was made to the testimony of Richard Noriega who testified to a statement made to him by Ruben Mendoza, who was present during the incident, and who was also a prosecution witness. Noriega's testimony concerning the statement made by Mendoza on the day following the alleged rape was that:

" * * * all the guys were drunk.

They had taken that lady to I don't know where, that he (Ruben Mendoza) had intercourse with that woman."

Although it was error to allow this statement over the objection of the appellants, it was not prejudicial as it could have had no effect as to the verdict against appellant. Mendoza was quoted as stating that he had raped the woman, but no one else was implicated in his statement as also performing this act.[2] This tended to impeach one of the state's leading witnesses (Mendoza), as it could only have weakened his testimony. Its erroneous admission does not require reversal of the case. State v. Coey, 82 Ariz. 133, 309 P.2d 260 (1957); State v. Thomas, 79 Ariz. 355, 290 P.2d 470 (1955).

Appellants assign as error the admission of hearsay evidence to which they failed to object during the trial. Therefore these assignments will not be considered on appeal.

■ Appellants next complain that the trial court refused to allow a hearing in the absence of the jury concerning the voluntariness of a purported written "confession" by appellant, Fred Owen, and the court failed to distinquish between a confession and an admission in its instructions to the jury. The written statement merely related that defendant was at the scene of the crime, but had denied that he had anything whatsoever to do with raping the prosecuting witness. It was an exculpatory statement, but not a confession, hence the assignment has no merit. See State v. Romo, 66 Ariz. 174, 185 P.2d 757 (1947).

■ Defendant claims that the trial court commented on the evidence in stating his reasons for overruling objections to introduction in evidence of the exculpatory statement we have just discussed. The court has a right to give reasons for such a ruling and this will not be treated as a comment on the evidence in violation of Article 6, § 27 of the Arizona Constitution, A.R.S. State v. Benham, 58 Ariz. 129, 118 P.2d 91 (1941); State v. Tuttle, 58 Ariz. 116, 118 P.2d 88 (1941).

■ Appellant complains of the trial court's refusal to permit impeachment of

---

2. As a witness for the state Mendoza, on cross-examination by appellant's counsel, implicated appellant but denied that he, Mendoza, had participated, in the alleged crime.

the prosecuting witness and the witness Ruben Mendoza on cross-examination. It appears from the record that in most instances the court properly sustained objections when the questions became argumentative or were improper in form, and did not exclude evidence tending to show bias or interest. The court sustained an objection to defendant's questioning the prosecuting witness regarding the legitimacy of her next to youngest child, who was five years old, as concerning matters too remote. However, defendant's counsel made no effort to inform the court what answer he expected to elicit from the prosecuting witness, or whether it was for the purpose of laying grounds for impeachment. The ruling may have been error, but in any event, in view of the fact that defendant had elicited testimony from the prosecuting witness that her youngest child was illegitimate, and that she had lived with the child's father for some time when neither she nor the father were divorced from their respective spouses, the evidence would be cumulative. We cannot say the court's refusal to permit defense counsel to question the legitimacy of an older child was prejudicial error.

Other rulings of the court refusing to permit the translation of certain Spanish words used by the prosecuting witness were not prejudicial.

Appellant claims as reversible error submission to the jury of the following instruction on flight, because there was no evidence to justify it:

"You are instructed that the flight of a person immediately after the commission of a crime is not sufficient in itself to establish his guilt, but is a fact, which, *if proved*, may be considered by you in the light of all other facts in deciding the question of his guilt or his innocence. Whether or not evidence of flight shows consciousness of guilt and the significance to be attached to such a circumstance are matters for your determination alone." (Emphasis supplied.)

We have held that flight or concealment of an accused is properly admissible in evidence as a fact which may be considered by the jury and from which they may draw an inference, in connection with the circumstances and in the absence of an explanation of the reasons or motives which prompted it, that the accused is guilty. State v. McLain, 74 Ariz. 132, 138, 245 P.2d 278; State v. Guerrero, 58 Ariz. 421, 120 P.2d 798. In McLain the evidence concerning flight is not related, and in Guerrero it appears that the defendant's flight consisted in escaping from officers after his arrest and remaining at large for some time. We have never passed directly on the point here involved, viz., whether leaving the scene of the crime under the particular circumstances related may constitute sufficient evidence

of flight to sustain the instruction complained of.

The reason for the rule of admissibility of evidence concerning flight or attempted flight is not that such flight in and of itself is evidence of guilt, but that it is a fact which may be considered by the triers of fact as raising an inference (in connection with other circumstances and in the absence of explanation of the reasons which prompted it) that the accused is guilty.[3] In other words, it is evidence of conduct which may indicate a consciousness of guilt on the part of the accused. Certainly a mere leaving of the scene of a crime is not a fact sufficient to constitute flight under all circumstances. In Guerrero we stated that "The law makes no nice or refined distinction as to the manner or method of a flight; it may be open, or it may be a hurried or concealed departure, or it may be a concealment within the jurisdiction." Ordinarily, unless the flight or attempted flight be open, as upon immediate pursuit, the element of concealment or attempted concealment is considered a necessary component. This obviously flows from the supposition that with a consciousness of guilt, "the wicked flee when no man pursueth" to avoid punishment.

Admittedly, the state did not introduce specific evidence that the defendant was pursued or that he had later hidden or concealed himself. However, there was evidence that the prosecuting witness had been beaten about the head, that she had been violently assaulted by several men (including the defendant) in a remote spot in the desert, and that she was abandoned there in a condition described by witnesses, who admittedly were present, as "blacked out" and "moaning". The prosecuting witness testified that she heard someone say "Let's hit the road, or words to that effect", and that the men ran. One witness who was present testified that after the event he "took off down the road", as did the others, including the defendant. From a technical standpoint, such conduct may only involve a leaving of the scene without specific showing of attempted concealment. However, there is no denial that an incident occurred involving sexual intercourse between the prosecuting witness and one or more of the several persons admittedly present (the defendant was unquestionably one of those present). The crime of rape with which defendant was charged involved such conduct by force or violence, against the woman's will or consent. If, as contended by defendant, the prosecuting witness was a willing partner, it is inconceivable to believe that she would be callously abandoned, "blacked out" and "moaning", alone in the desert. Rather than such brutish behavior, it would be more consistent with ordinary human psychology that after the occurrence the participants would at least depart together in an atmos-

3. State v. Guerrero, supra.

phere of amiability, and that the prosecuting witness would be returned to town or to some place where she could go home without too much difficulty. Abandoning her at the scene under all the circumstances revealed by the evidence is certainly sufficient to allow the jury to determine whether defendant's behavior constituted flight, from which the jury might draw an inference that the defendant was conscious of guilt.

Even if the instruction be considered erroneous from a technical standpoint, in view of all the evidence, we believe it is not prejudicial, and that it falls within the purview of Article 6, § 27, Arizona Constitution, directing that no reversal shall be had for technical error in proceedings when upon the whole case it shall appear that substantial justice had been done. We cannot say substantial justice was not done here.

Judgment affirmed.

UDALL, V. C. J., and JENNINGS, J., concur.

BERNSTEIN, Chief Justice (dissenting).

I regret that I cannot agree with the majority of the Court for the following reasons.

I disagree with the position the majority has taken as to the instruction on flight. Flight is evidence of guilt and in connection with other proof may be the basis from which guilt may be inferred. It is the absenting of oneself from the community of the crime out of the fear of or to avoid arrest. It is admitted under the exception to the hearsay rule that allows admissions against interest of a party. See Udall, Evidence § 178 (1960). The relevance of such evidence is based on the proposition that from the fact that the accused fled the scene of a crime, an inference arises that he is conscious of his own guilt. 1 Wharton, Criminal Evidence § 205 (12th Ed. 1955) (citing cases).

I strongly oppose the majority's liberalization of the definition of flight. Any number of reasons having nothing to do with guilt could be given for the departure of the defendant. Therefore, it is essential that there be evidence suggesting a consciousness of guilt on his part before the jury is instructed that his departure from the scene may be considered by them as a circumstance indicating his guilt. See People v. Brecker, 20 Cal.App. 205, 127 P. 666 (1912).

The courts universally recognize that, before instructing the jury on flight, there must be evidence that the accused not only left the scene of the crime, but that he also concealed himself, or made some effort to do so. Commonwealth v. Logan, 198 Pa. Super. 635, 184 A.2d 321 (1962). The Supreme Court of Illinois defined flight in the following terms:

" ' * * * the evading of the course of justice by voluntarily withdrawing oneself in order to avoid arrest or detention, or the institution or continuance of criminal proceedings. *The term signifies, in legal parlance, not merely a leaving, but a leaving or concealment under a consciousness of guilt and for the purpose of evading arrest.* Such ~onsciousness and purpose is that which gives to the act of leaving its real incriminating character.' " People v. Herbert, 361 Ill. 64, 73–74, 196 N.E. 821, 825 (1935). (Emphasis added).

The Court in Logan held that the evidence did not warrant an instruction on flight, and that the giving of one was so prejudicial as to constitute reversible error.

In the instant case, the instruction was likewise prejudicial. Although the defendant himself did not testify, witnesses said that they simply walked away from the area and returned to town. The next day they were seen about town. There is no evidence that they made any effort to evade arrest; consequently, the facts did not support an instruction on flight. See People v. Rischo, 262 Ill. 596, 105 N.E. 8 (1914).

I also dissent from approval by the majority of the testimony of statements made by the prosecutrix concerning the incident, admitted in evidence as part of the res gestae. My reason for dissent here are fully set forth in the dissent in State v. Finley, 85 Ariz. 327, 338 P.2d 790 (1959).

I am also of the opinion that Art. 6, Sec. 27 of the Arizona Constitution was never intended to allow this Court to sweep difficult legal problems under the rug.

STRUCKMEYER, Justice.

I concur without reservation in the dissent of Chief Justice BERNSTEIN. It is my opinion this defendant did not receive a fair trial.