501 P.2d 585

**STATE of Arizona, Appellee,**

v.

**Derald Harris STEED, Appellant.**

**No. 1 CA–CR 408.**

Court of Appeals of Arizona,
Division 1,
Department B.

Oct. 5, 1972.

Rehearing Denied Oct. 31, 1972.

Review Granted Dec. 5, 1972.

Gary K. Nelson, Atty. Gen., by William P. Dixon, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Public Defender for Maricopa County, by James H. Kemper, Deputy Public Defender, Phoenix, for appellant.

HAIRE, Chief Judge, Division 1.

Defendant Derald Harris Steed has appealed from a judgment of conviction entered upon a jury verdict finding him guilty of aggravated assault, and from his sentence thereon of not less than two nor more than five years.

Questions are raised on appeal concerning the propriety of a flight instruction and also concerning the fact that defendant was not represented by counsel at the time of sentencing.

We consider first the facts pertaining to the giving of the flight instruction. The information charged defendant with assault by means of force likely to produce great bodily injury in violation of A.R.S. § 13–249. The victim was alleged to be Marcella Steed, who testified that she was married to defendant and that they had three children, but that she had been separated from him for two years prior to the date that she saw him at a tavern where she worked as a barmaid. She testified that the defendant came in at about 1:00 o'clock in the morning just before closing. The defendant informed Marcella that he had bought a spare tire for her car. Later, when the two were outside, according to Marcella, the defendant put his arm about her, and when she told him not to do so he began "beating me in the face with his fist". She said that he hit her quite a few times and broke her false teeth and fractured her cheekbone in the process.

The defendant then dragged her to his own car and began to hit her face and head on its roof. The defendant did this five times according to Marcella. Finally, he threw her in the car and drove off threatening to kill her. At the red light at the intersection of 35th Avenue and Camelback Road, Phoenix, Arizona, Marcella tried to jump from the car but the defendant succeeded in grabbing her, and as the light turned green, he drove off with Marcella half in and half out of the automobile. She was dragged like this for about a block, and suffered numerous cuts and abrasions on her feet and legs in the process. At last Marcella escaped and she began to run. The defendant stopped the car and ran after her, but while he was doing this his car began to roll and he stopped pursuing her and ran back to catch his car. A witness named Crawford had stopped at the light behind the Steeds and Marcella then approached him and secured his aid. The defendant drove away.

■ Since the circumstances surrounding the defendant's departure from the scene are crucial to a determination of the propriety of the giving of the flight instruction, we quote the pertinent portions of the testimony.

Mr. Crawford, the driver of the automobile immediately behind defendant's automobile, testified as follows:

"Q. Will you describe how he left the area?

"A. Yes, sir.

After Mrs. Steed worked her way loose, and the defendant, Mr. Steed, got out of the car to go get her—I imagine get her—and at the time he looked up, I was directly behind his car and he looked at me and he got back in his car and took off at a high rate of speed."

Mrs. Steed, the victim, testified:

"A. And then, I don't know how I got loose, I really don't, but I got loose and I started running and he stopped the car and started running after me, but his car started rolling, so he had to run to his car, and then he took right off. As soon as he took off I went back to Crawford's car that was behind me.

"Q. Could you describe how he took off?

"A. Real fast."

The defendant, after stating that his car was rolling and he had to catch it, testified that he "left quickly".

Within a very short period thereafter, defendant was apprehended by an investigating officer who was on his way to the scene of the incident. Defendant was apprehended as he was pulling out of a parking lot at 19th Avenue and Camelback, approximately sixteen blocks from the scene of the alleged assault.

The Arizona Supreme Court laid down the standard for the consideration of a flight instruction in State v. Owen, 94 Ariz. 404, 385 P.2d 700 (1963) as follows:

"Certainly a mere leaving of the scene of a crime is not a fact sufficient to constitute flight under all circumstances. . . . Ordinarily, unless the flight or attempted flight be open, as upon immediate pursuit, the element of concealment or attempted concealment is considered a necessary component." 94 Ariz. at 411, 385 P.2d at 704.

The underlying assumption in such an instruction is that under the facts, the flight demonstrates a consciousness of guilt. State v. Owen, *supra*.

Many courts disapprove of the use of flight instructions:

". . . [I]t is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses. Nor is it true as an accepted axiom of criminal law that 'the wicked flee when no man pursueth, but the righteous are as bold as a lion.'" Alberty v. United States, 162 U.S. 499, 511, 16 S.Ct. 864, 868, 40 L.Ed. 1051 (1896).

The Arizona courts have likewise been sparing in their approval of flight instructions. *See* e. g., State v. Rodgers, 103 Ariz. 393, 442 P.2d 840 (1968); State v. Castro, 106 Ariz. 78, 471 P.2d 274 (1970); State v. Milton, 15 Ariz.App. 392, 489 P.2d 55 (1971).

In Rodgers the defendant was driving a car with three female passengers. While stopped the car was approached by three soldiers, one of whom had hit one of the passengers on a previous occasion. An altercation developed between that soldier and the defendant which ended when the defendant shot the soldier in the cheek with a pistol. The defendant then drove off. The Arizona Supreme Court held that a flight instruction should not have been given because there was no evidence that the defendant tried to conceal himself and because the defendant justifiably feared reprisal from the two other soldiers against himself and the three women.

The defendant in Castro left the scene of a disturbance when he had just knifed a man. Afterwards the defendant walked away from the scene of the fight past two witnesses. Again the Arizona Supreme Court reversed because the flight instruction was given. The court reasoned that it was reasonable for the defendant to leave the scene, since he did not live there. Considering also that the defendant made no attempt to conceal himself, the court found that there was insufficient evidence to justify the flight instruction.

In Milton the defendant was charged with theft. The victim testified that the defendant left the store in which the theft occurred in a hurry, but she was not running or attempting to conceal herself. The Court of Appeals held that the evidence did not support an instruction on flight.

In the case at bar the defendant did not merely leave the scene, he drove off at a high rate of speed. In addition, he did so at a time when one could reasonably expect him to stay. A passenger had just fallen out of his car while he was driving down the street. There was no evidence that the defendant feared reprisal from anyone at the scene or that he had merely concluded his business and was in the process of going on his way.

It would stretch credulity to believe that the defendant's actions manifested anything but a consciousness of wrongdoing. Under the particular facts of this case we find sufficient evidence to support the flight instruction. Inasmuch as we find that the flight instruction was properly given, we need not consider the state's contention that the defendant waived any claimed error in this regard by his failure to object to the giving of the flight instruction.

Defendant's second contention is that the matter must be remanded for resentencing because he was not represented by counsel at the time of sentencing.

The record reflects that on August 5, 1970, at the time originally set for preliminary hearing, the defendant was represented by the Public Defender, but requested a continuance in order that he might obtain private counsel. He had previously been advised of his right to counsel and had been released on a $5,500 bail bond. He subsequently obtained private counsel who represented him at both the preliminary hearing which was finally held on October 7, 1970, and at his arraignment on November 2, 1970. On December 6, 1970, the trial court entered an order permitting his privately retained counsel to withdraw. Trial was set for March 2, 1971, and at that time the trial court again advised defendant of his right to have counsel appointed and to have a continuance in order to allow appointed counsel an adequate opportunity to prepare. However defendant elected to represent himself. The jury verdict against defendant was returned on March 3, 1971. The defendant was sentenced on March 23, 1971. The sentencing transcript reflects that he was not represented by counsel at the time of sentencing, and in fact, when the County Attorney inquired, the trial judge said "no, he was representing himself in this case". There is nothing in the record to indicate a waiver of the right to counsel at sentencing,

other than that which might be inferred from the waiver at the commencement of the trial.

Defendant's contention concerning counsel at the time of sentencing raises two questions:

1. Was defendant entitled to counsel at sentencing?
2. Was defendant's waiver of counsel at trial sufficient to constitute waiver at sentencing?

The answer to the first question is clearly in the affirmative. Had defendant wished, he could have requested that counsel be appointed prior to the sentencing hearing and such request would have been granted. As our Supreme Court noted in Lee v. State, 99 Ariz. 269, 270, 408 P.2d 408, 409 (1965):

> "While there is a sharp conflict in authorities as to whether the presence of counsel for an accused is necessary at the time of sentence, we think the better rule is that when counsel has not been waived the absence thereof invalidates the sentence. In re Boyce, 51 Cal.2d 699, 336 P.2d 164. [1959] If there is any one time that a defendant on a criminal charge may be in need of an attorney to speak in his behalf or to advise him of his legal rights it can well be at the time of sentencing."

This conclusion is additionally mandated by the fact that defendant can now discover and attempt to refute the findings of the presentence report and can present other mitigating circumstances under Rule 336, Rules of Criminal Procedure, 17 A.R.S. State v. Pierce, 108 Ariz. 174, 494 P.2d 696 (1972). Sentencing is thus very much like a revocation of probation hearing at which counsel is clearly required. *See* Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); State v. Walter, 12 Ariz.App. 282, 469 P.2d 848 (1970). Should the sentencing procedure here be invalidated, however, it would only require a new sentencing hearing, not a new trial. State v. Sample, 107 Ariz. 407, 489 P.2d 44 (1971); Martin v. Eyman, 102 Ariz. 341, 429 P.2d 660 (1967).

The question of primary importance is whether appellant's waiver of counsel at trial was sufficient to constitute waiver of counsel at the sentencing procedure. In reviewing the record we note that the trial judge fully and carefully informed defendant of his right to counsel at trial. Again, before defendant took the stand, the judge informed him of his right against self-incrimination. Defendant was not informed, however, that if at any time during the proceedings he wished counsel, counsel would be appointed, nor was he specifically informed that if, following trial, he wished counsel at the sentencing hearing, counsel would be appointed.

The state cites State v. Edge, 96 Ariz. 302, 394 P.2d 418 (1964) for the proposition that waiver of counsel at trial constitutes waiver at sentencing. That decision, unfortunately, is based upon the assumption that counsel was not constitutionally required at the revocation of probation hearing in any event, which holding has been overruled by the United States Supreme Court in Mempa v. Rhay, *supra*. If there were any indication in the record that defendant knew that he had a continuing right to have the services of appointed counsel, and that this right extended to the time of the sentencing hearing, we would not be in the least hesitant to hold that his initial waiver of the right to counsel at the time of trial carried over to the sentencing process. However, there is no such indication in the record, and we cannot presume from a silent record that the waiver continued in existence at this separate, critical stage of the criminal process. *Cf.* Chessman v. Teets, 354 U.S. 156, 77 S.Ct. 1127, 1 L.Ed.2d 1253 (1957).

The judgment of conviction is affirmed, the sentence heretofore imposed is set aside, and the matter is remanded for re-sentencing at a hearing in which defendant is accorded the right to representation by appointed counsel or by his own privately employed counsel.

EUBANK and JACOBSON, JJ., concur.