**STATE of Missouri, Respondent,**

**v.**

**James Edward STEPHENS, Appellant.**

**No. 57063.**

Supreme Court of Missouri,
Court en Banc.

March 11, 1974.

John C. Danforth, Atty. Gen., Neil Mac-Farlane, Daniel P. Card, II, Asst. Attys. Gen., Jefferson City, for respondent.

Murry A. Marks, Clayton, for appellant.

STOCKARD, Commissioner.

This is an appeal from the judgment entered pursuant to jury verdict wherein James Edward Stephens was found guilty of second degree murder. The notice of appeal was filed prior to January 1, 1972.

The sufficiency of the evidence is not challenged. The jury reasonably could find that on September 10, 1970, appellant intentionally shot and killed Daniel Hunter.

Appellant's first point is that the trial court erred in overruling his pretrial motion "to suppress the line-up," and also in permitting Larry Sullivan to make an incourt identification. From argument we find that appellant contends the lineup was improper because counsel was not present, and his challenge to the incourt identification is on the basis that it was tainted by the improper lineup.

■ The lineup in this case was held before the indictment was returned by the grand jury. Therefore, the absence of counsel did not deprive appellant of any constitutional right. State v. Walters, 457 S.W.2d 817 (Mo.1970); Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). In addition, the State presented no evidence at the trial of any lineup identification. In that situation it is immaterial, even if appellant was entitled to counsel at the lineup, that none was present. Reynolds v. Lockhart, 470 F.2d 161 (8th Cir. 1972).

■ Appellant's challenge to the incourt identification is without merit. As noted, the presence of counsel was not required at the lineup, and our review of the record shows a substantial independent basis for the incourt identification. We shall not review that evidence because, in any event, appellant testified in his own behalf and unequivocally stated that he intentionally shot Daniel Hunter at the time and place mentioned in the indictment. This removed from the case any issue of the identification of appellant as the one who committed the act with which he was charged. Assuming something improper in the lineup or in the admission in evidence of the incourt identification testimony of Larry Sullivan, which in our opinion did not occur, the error would have been harmless beyond a reasonable doubt.

■ Appellant's second point is that the trial court erred in overruling his motion "to strike the names" of three witnesses who were endorsed as prospective witnesses for the State.

Appellant propounded interrogatories pursuant to Rule 25.11 V.A.M.R., to be answered by the three witnesses. Three months later the interrogatories had not been answered, and at appellant's request the trial court directed that answers be made. A month later, after the trial had started and the jury had been selected but not sworn, appellant filed a motion to strike or exclude the testimony of the witnesses to whom the interrogatories had been directed because no answers to those interrogatories had yet been received. It was then developed that the assistant circuit attorney in charge of the trial was not the person who represented the State when the court had ordered the interrogatories to be answered, and trial counsel did not know why the answers had not been made. The court directed that the assistant circuit attorney who had represented the State at the time the order had been entered be brought before it. Apparently this was done, and a proceeding was held in the court's chambers. What there occurred is not shown in the record, but the court overruled appellant's motion to strike or exclude the testimony of the three witnesses, and it directed that the interrogatories be answered before the jury was sworn. In its comments the court stated that it considered the motion to strike or exclude the testimony to be untimely under the cir-

cumstances. The court also stated that it had received a letter from appellant's counsel in which he requested that the case be set for trial, and in which he stated that appellant was ready to go to trial. The court concluded that any objection to the delay in receiving the answers had been waived. The reason the interrogatories were not answered earlier is not shown, but after the answers were made, which was prior to the time the jury was sworn, there was no request for a delay and there was no objection to then proceeding to trial.

In the above circumstances, we cannot rule that the trial court abused its discretion in overruling appellant's motion, particularly when he now does not demonstrate any prejudice to him by the delay in receiving the answers to the interrogatories.

■ Appellant's third point is that the trial court erred in overruling his motion to suppress all statements or confessions made by him.

Appellant does not contend that he was not given the "Miranda" warnings, but instead he contends that at the time he made the statements he was intoxicated to such a degree that he could not understand the warnings given to him· or appreciate the effect of his statements. After a pretrial hearing on this issue, the trial court overruled the motion to suppress, but it did not enter of record a finding with unmistakable clarity that the statements of appellant were voluntarily made. For that reason we required that there be held a supplemental hearing on that issue. See Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1963). The transcript of that hearing has been made a part of the transcript of this case.

At the first hearing on the issue of voluntariness of the statements, two police officers testified that appellant was given the "Miranda" warnings, that he then stated he wanted to make a statement, and that he did so after requesting and being permitted to talk to his brother. One of the officers stated that there was "some odor of alcoholic beverage" on appellant, that he had been drinking but was not intoxicated, and that he was coherent and his speech was not slurred. Another officer testified that he detected an odor of alcohol on appellant, and that in his judgment appellant had been drinking. He was not asked if he considered appellant to be intoxicated, or whether he exhibited any other indications of intoxication. Appellant testified that before he turned himself in to the police he had consumed a half case of beer and about a "fifth" of whiskey, and that when he went to the police station he was· "blind drunk." He further testified that he did not remember making any statements, and he did not remember meeting or talking to the police officers. Appellant's mother-in-law and wife both testified that appellant was drunk when he went to the police station to turn himself in.

At the supplemental hearing, appellant called only one witness, Police Officer Francis Sullivan. He testified that about midnight of October 7, 1970, he received a telephone call at his home from a person by the name of Walsh, known to Officer Sullivan as a person who worked for a bonding company, who stated that appellant wanted to surrender to the police. About two hours later Officer Sullivan met appellant, who was accompanied by his wife, his mother-in-law, and Mr. and Mrs. Walsh. Officer Sullivan had known appellant for about fifteen years, and he spoke to him and shook hands with him. He then took appellant to the fourth floor of the police station where he made out the report for his detention. It was Officer Sullivan's opinion that appellant had been drinking, but that he was not intoxicated. He did not discuss with appellant the charge against him, and appellant made no statement to him.

Appellant's counsel indicated a desire to call Mr. and Mrs. Walsh, at the supplementary hearing, and the court directed

the sheriff to assist in having them present. It developed that Mrs. Walsh was not available because of illness. Mr. Walsh was present in the court the following day, and the record shows that appellant's counsel "talked to Mr. Walsh in the presence of [appellant] and [appellant was thoroughly advised as to what Mr. Walsh's testimony would be, and [appellant's counsel] recommended and [appellant] concurred that Mr. Walsh be not called as a witness, and [appellant's counsel] further indicated if Mrs. Walsh were available her testimony would be similar and therefore he would not call her as a witness."

In detailed findings of fact, the trial court concluded and found that the statements of appellant made to police officers and subsequently admitted into evidence "were voluntarily made and were a product of a rational intellect and the exercise of free will by the defendant." This finding was necessarily based on an evaluation by the court of the credibility of the witnesses. It was not required to believe the testimony of appellant that he was "dead drunk." In arriving at its findings the trial court noted circumstances inconsistent with appellant's claim that he was so intoxicated he could not have made voluntary statements to the police. For example, before appellant surrendered himself he contacted Mrs. Walsh in her capacity as a writer of recognizance bonds. He was accompanied to the place to meet Officer Sullivan by his wife and mother-in-law who made no contention at that time that he was intoxicated. Appellant testified in detail about his acts immediately prior to surrender, but claimed he was "dead drunk" immediately after his surrender. After being made aware of the testimony of Mr. Walsh, a disinterested person who accompanied appellant to the police station, he elected not to present his testimony. We need not mention other circumstances. These are sufficient to demonstrate the reasonable basis for the trial court to refuse to believe appellant's version of circumstances in which he made the statements to the police officers. We find no merit to appellant's contention that the trial court erred in failing to suppress as evidence the statements made by him.

Appellant next asserts that the trial court erred in giving to the jury an instruction on flight. Appellant relies on State v. Owen, 94 Ariz. 404, 385 P.2d 700 (1963), and other Arizona cases which hold, in effect, that the mere departure from the scene of the crime does not authorize an instruction on flight. However, the cases relied on hold that the gravamen of flight is the leaving of the scene of the crime under circumstances that would suggest consciousness of guilt. See State v. Bailey, 107 Ariz. 451, 489 P.2d 261 (1971).

Assuming that departure alone from the scene does not constitute flight, the evidence in this case clearly justified the instruction. Appellant admitted he intentionally shot Daniel Hunter, but he claimed self-defense. However, he also admitted that after the shooting he immediately got into an automobile which his brother was operating and said, "Let's get the hell out of here." He also testified that while he did not leave St. Louis, he knew the police were looking for him and he left his usual place of residence and lived at various other places. It was over a month after the shooting that he turned himself in to the police. The circumstance of his departure from the scene of the shooting, and the intentional concealment of his whereabouts for over a month clearly authorized a finding that appellant's leaving the scene of the crime was with a consciousness of guilt, and the instruction was authorized.

Appellant next contends that prejudicial error resulted when the court permitted counsel for the State in closing argument "to argue punishment other than the death penalty because only the death penalty was requested in the prosecution's opening argument."

In opening argument counsel for the State explained the degrees of homicide as to which the court had instructed the jury. In commenting on first degree murder, he stated "the punishment range is no less than life and the death penalty is the other possibility that you have to choose from." He also stated, "I ask you not only to consider but to return the death penalty in this case." He then commented concerning second degree murder and said, "Now, murder second degree is different in its punishment range than murder first degree." He explained that the minimum punishment was imprisonment for ten years, but "the ladder has no top, it can be 150 years, 250 years, it can be a thousand years, it can be 50 years, there is no great top." He then commented on the authorized punishment for manslaughter.

In closing argument, counsel for the State argued that the jury should not compromise, and he stated that he was not asking the jury to "bring back a murder first degree and life verdict," but if the jury could not impose the death penalty it should "return a murder second degree verdict and assess his punishment at no less than 150 years." Appellant objected because "that's an improper comment on the court's instructions, it's inflammatory and prejudicial and I move that it be stricken." Later, counsel argued that for second degree murder "there is no limit," and that if the jury could not "mete out murder first degree death penalty," it should "teach him a lesson he will never forget." The objection to this argument was that it was "inflammatory and prejudicial." There was no objection on the basis that counsel was arguing matters in closing argument that had not been mentioned in the opening argument.

■ Appellant's contention on this appeal must fail for two reasons. First, counsel for the State in opening argument did argue the issue of punishment, and while he said he would ask for the imposition of the death penalty, he did not say that he would not argue for a punishment other than the death penalty. In fact, he mentioned the other permissible punishments. In closing argument he again asked for the death penalty, but added that if the jury could not impose that penalty it should impose one of the other punishments mentioned in opening argument and in the court's instructions. We see nothing wrong in that argument. Second, assuming some merit to appellant's contention, but we find none, there was no objection presenting to the trial court the contention now made, and there was no request that appellant be granted an opportunity for rebuttal of the argument now contended to have been beyond the scope of the opening argument. See State v. Hale, 371 S.W.2d 249, 256 (Mo.1963).

■ Appellant's final contention is that the sentence of 200 years which was imposed by the jury constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the Constitution of the United States.

The punishment authorized by statute for second degree murder is "imprisonment in the penitentiary not less than ten years." The statute does not establish a limit to the duration of imprisonment. § 559.030, RSMo 1969, V.A.M.S. Therefore, pursuant to § 546.490, RSMo 1969, V.A.M.S., the permissible punishment includes "imprisonment during his natural life, or for any number of years not less than such as are prescribed." The sentence here imposed does not violate the statutory provisions. In Sills v. State, Tex.Crim.App., 472 S.W.2d 119 (1971), the Texas court suggested in a case in which the jury imposed a sentence of 1,000 years that the legislature might consider setting a maximum as well as a minimum sentence for every crime. Whether or not a maximum limit for the term of imprisonment for second degree murder is desirable, the Missouri legislature has not established one. The trial court was not specifically asked to exercise its authority pursuant to § 546.430, RSMo 1969, V.A.M.S., to reduce the extent or duration of the sentence imposed by the jury.

"Constitutional provisions against cruel and unusual punishment are aimed primarily at the kind of punishment imposed, not

its duration." 21 Am.Jur.2d Criminal Law § 314. For that reason the imposition of the sentence in this case does not violate either constitutional amendment referred to by appellant. See the annotations at 33 A.L.R.3d 335. We also note that the liberal provisions of parole are available to appellant. See § 549.261, RSMo 1969, V.A. M.S.

The judgment is affirmed.

PER CURIAM:

The Division Two Opinion by STOCKARD, C., is adopted as the opinion of the Court en Banc.

DONNELLY, C. J., and MORGAN, HOLMAN and HENLEY, JJ., concur.

FINCH, J., dissents in separate dissenting opinion filed.

SEILER and BARDGETT, JJ., dissent and concur in separate dissenting opinion of FINCH, J.,

FINCH, Judge (dissenting).

I respectfully dissent for the reason that the state improperly and prejudicially argued for punishment in excess of that authorized by statute for murder in the second degree and because, as a result, the jury assessed, and the trial judge imposed, a term which, in my judgment, exceeds the maximum permitted by statute.

As noted in the principal opinion, the jury found defendant guilty of murder in the second degree and fixed his punishment at imprisonment for 200 years. This verdict followed argument by counsel for the state wherein he urged conviction of murder in the first degree and imposition of the death penalty (then permissible), but went on to say that if they were not going to assess a death sentence, they should convict of second degree murder—not first—because there is no limit on punishment for second degree murder and defendant could be sentenced to 150 years, 250 years, or a 1000 years.

The principal opinion holds that the Missouri legislature has not established any upper limit for the term of imprisonment for second degree murder, and that the sentence of 200 years was permissible. This conclusion, as the principal opinion shows, is based on an interpretation of the provisions of §§ 559.030 and 546.490.[1] Section 559.030 provides that one convicted of murder in the second degree shall be punished by imprisonment for not less ·than ten years, but provides no maximum therefor. In such a situation, § 546.490 becomes applicable. It states that when any "offender is declared by law punishable * * * by imprisonment in the penitentiary for a term not less than any specified number of years, and no limit to the duration of such imprisonment is declared, the offender may be sentenced to imprisonment during his natural life, or for any number of years not less than such as are prescribed * * *."

It is obvious that the principal opinion considers that the clause "or for any number of years not less than such as are prescribed" is entirely independent of and without any relationship to the earlier provision in § 546.490 which provides at the outset for imprisonment during one's natural life. It is on this basis that the opinion concludes that the language about imprisonment for any number of years is open ended.

In the first place, this conclusion is a non sequitur in view of what the section undertakes to accomplish. It starts out by saying that it is applicable only where a statute establishes the minimum number of years imprisonment which may be imposed but provides nothing about a maximum. The inescapable conclusion, I submit, is that the purpose of § 546.490 was to establish a maximum punishment, thereby supplying that which the original sections did not do.

In contrast, the state contends for, and the principal opinion adopts, an interpreta-

---

1. All statutory references are to RSMo 1969, V.A.M.S.

tion of § 546.490 which still establishes no maximum sentence for the offenses to which it is applicable. Instead, according to that interpretation, § 546.490 prepetuates the very deficiency which it was intended to correct. According to the state and the principal opinion, there still is no maximum punishment established by § 546.-490 for murder in the second degree (or for any other offense to which it is applicable), and the jury, following conviction, may assess a term of 200, 500, 1000, or even 5000 years imprisonment. The statute, according to that interpretation, now specifically authorizes a sentence of life imprisonment but it is not a maximum, and § 546.490, like § 559.030, establishes a minimum but no maximum punishment. I repeat that this interpretation results in § 546.490 becoming a complete non sequitur when its expressed purpose is to supply a deficiency which exists in those statutes providing a minimum but no maximum period of incarceration in the penitentiary.[2]

Secondly, the conclusion reached in the principal opinion as to the effect of § 546.490 is in conflict, it seems to me, with that reached by this court in State v. Robinson, 177 S.W.2d 499 (Mo.1944), in which Judge Tipton, speaking for the court, held that the range of punishment for murder in the second degree "is from ten years to life." The applicable statutes then existing were the same as at present.

In the third place, such interpretation ascribes to the general assembly an intention to provide for imprisonment for more than the single mortal life which an individual has. In other words, it interprets the statutes as authorizing a sentence which is impossible of fulfillment. In addition, it results in an anomalous situation wherein

greater punishment is established for second degree murder than for first degree murder (life imprisonment), even though second degree murder is a lesser included offense of first degree murder.

In contrast, interpreting § 546.490 as providing for a maximum of life imprisonment results in a perfectly possible and understandable range of punishment. Under that interpretation, one convicted of second degree murder may be sentenced to a minimum of ten years or a term for additional years ranging up to a maximum of life imprisonment. Such interpretation recognizes that the legislature did not intend to attempt to imprison one for more than his single mortal life. It results in a workable statute. In my judgment, this is the interpretation which we are obligated to adopt.

One alternative disposition in this case would be to reverse and remand the case for new trial, but, in my judgment, that is not necessary to rectify the situation. Counsel's argument with respect to the length of punishment related not to guilt but simply to the length of the sentence imposed. There is no reason why it would be necessary to retry the case in order to establish the defendant's guilt. The principal opinion has concluded that other matters complained of do not entitle the defendant to a new trial, and with those conclusions, I agree. The only need is to correct the sentence imposed.

The second alternative, it seems to me, is to reduce the sentence to one of life imprisonment, the maximum prescribed for murder in the second degree. This is what the defendant's brief requests. This could be done by reversing and remanding to the trial court with directions to the court to

---

2. It should be noted that effective January 1, 1974, the verdict directing instruction in second degree murder cases mandated by Missouri Approved Instructions—Criminal (MAI–CR) provides that if the jury finds defendant guilty, it "will fix his punishment at imprisonment by the Department of Corrections for a term fixed by you, but not less than ten years nor more than life imprison-

ment." MAI–CR 6.06. Other instructions with comparable language are MAI–CR 6.22, 6.32, 6.40, 6.42, 7.02, 7.60 and 7.62. These new instructions should prevent recurrence of argument such as that made in this case, as obviously it would be contrary to the court's instruction on the range of punishment.

resentence the defendant to the highest limit, namely, life imprisonment, pursuant to the authorization in § 546.490. In the alternative, this court by its judgment may do the same thing, as the court recognized in the cases of State v. Cuckovich, 485 S.W.2d 16 (Mo. banc 1972), and State v. Granberry, 484 S.W.2d 295 (Mo. banc 1972), wherein it reduced sentences of death to life imprisonment after the Supreme Court of the United States ruled that the death sentence could not be imposed and that under existing statutes life imprisonment was the maximum sentence permissible. In my judgment, that is the proper course and I would affirm the conviction, reducing the sentence to life imprisonment.