309 P.2d 260

STATE of Arizona, Appellee,

v.

Leonard COEY, Appellant.

No. 1082.

Supreme Court of Arizona.

March 19, 1957.

Arthur M. Johnson and Robert E. Yount, Phoenix, for appellant.

Robert Morrison, Atty. Gen., and L. Alton Riggs, Sp. Asst. Atty. Gen., for appellee.

LA PRADE, Justice.

The defendant-appellant, Leonard Coey, was convicted of the crime of murder in the first degree and sentenced to be executed. From the judgment and sentence he has perfected this appeal.

There is no significant dispute as to the events which led up to, and included, the alleged crime. The facts briefly stated are as follows: The deceased victim was the wife of the defendant. She was approximately half his size, and about half his age. She was employed and he was not. She had filed for divorce against the defendant, and the court had issued the usual "restraining order and order to show cause" directing, among other things, that he leave the family abode forthwith. Defendant's first knowledge of this was on the morning of January 27, 1955, when a process server appeared at the home and made service upon him. He testified that he had made preparation to leave but was reluctant to do so because he felt that he should remain with his children to protect them from his wife. In the early afternoon of the same day the defendant and his wife entered a small shed at the rear of their home, and while there the defendant mortally wounded his wife with a .45 caliber revolver which he had obtained for the claimed purpose of protecting his children from anticipated assaults by his wife. He then loaded her body in his automobile, drove to the Maricopa County Sheriff's office, where he announced that he had a dead woman in the car, and while there he pulled her body out of the automobile to the ground and stated "there is the son-of-a-bitch. She tried once too often to kill me and my kids".

Defendant freely gave a statement setting forth the above events but claimed that while he and his wife were in the shed the wife attacked him with a hammer and he then shot her. Defendant continued to maintain this theory of "self-defense" throughout the trial, although it was by no means supported by the evidence, and, at his insistence, his attorneys presented such defense. His attorneys at the same time urged, over his violent objections, the defense of insanity. The defendant's counsel conceded that except for the issue of insanity the jury might well have found from the evidence that the defendant committed murder in the first degree.

The appellant presents eight assignments of error, each of which is separately considered herein.

Under assignment No. 1 appellant contends that the jury was erroneously instructed on the matter of "partial insanity", on the ground that there was no evidence upon which such instruction could be predicated. The issue of insanity was in the case at the instance of the defendant. Testimony on this issue was introduced, including both lay and expert testimony. The instruction assailed is in substance the same as that approved by our court in State v. Macias, 60 Ariz. 93, 131 P.2d 810, and in State v. Eisenstein, 72 Ariz. 320, 235 P.2d 1011. It is consistent in all respects with the basic test of insanity generally applied in criminal cases, namely, whether the party accused possessed the ability to distinguish right from wrong at the time of the commission of the alleged crime. State v. Macias, supra; Burgunder v. State, 55 Ariz. 411, 103 P.2d 256. The term "partial insanity" referred to and defined in this instruction is merely explanatory of the basic test hereinabove set forth. The instruction when viewed in the light of the basic test explained the type of insanity which would relieve the defendant from the consequences of his act, in language simple and readily understood by the jury. It was, therefore, a proper instruction on the issue of insanity.

In assignment of error No. 2 it is contended that a statement made to the jury by the county attorney, to the effect that if their verdict were life imprisonment rather than death, the defendant would be imprisoned for only a few years, constitutes reversible error based upon resulting prejudice. Such comment is permissible in this jurisdiction. State v. Jordan, 80 Ariz. 193, 294 P.2d 677; State v. Macias, supra. In the latter case the rule was set forth that in first degree murder cases, where the jury has discretion to fix the penalty at either death or life imprisonment, it is proper for the jury to consider the probability that the defendant will actually serve the penalty should they determine the sentence to be life imprisonment. In accord with this rule it was held that the county attorney's statement alluding to such probability did not constitute error. We are apprised of no substantial reason for departing from the holding of that case, and, therefore, find that the comparable comment made in the case before us was not error.

Under assignment No. 3 appellant asserts that failure of an expert, appointed by the court pursuant to Rule 305, Criminal Procedure, section 44–1702, A.C.A. 1939; omitted from Rules of Criminal Procedure effective January 1, 1956, to testify, where the appointive order was not vacated, constitutes reversible error. Court rules, like statutes, must be construed in the light of the purpose for which they were adopted. Collins v. Superior Court, 48 Ariz. 381, 62 P.2d 131; DeCamp v. Central Arizona Light & Power Co., 47 Airz. 517, 57 P.2d 311. In State v. Cassady, 67 Ariz. 48, 190 P.2d 501, 506, we said:

"Our rules of criminal procedure should be construed so as to promote justice—not to thwart it. * * *"

The latter portion of Rule 305, supra, provided that:

"* * * The experts appointed by the court shall be summoned to testify at the trial and shall be examined by the court and may be examined by counsel for the state and the defendant."

It cannot be seriously contended that under this rule it was intended that the burden of summoning experts to testify be cast upon busy trial courts already overburdened; the obvious purpose of the rule was to insure that qualified experts would be available if they were needed by either party, to testify on the issue of insanity under circumstances where the defendant has announced his intention to rely upon this defense. This being its purpose we find the above-quoted portion of the rule was directory rather than mandatory. It was, therefore, discretionary with counsel whether the expert appointed pursuant to this rule should be called, and, therefore, his failure to testify did not constitute error.

 Appellant next complains in his assignment of error No. 4 that he was prejudiced by the non-availability of his children to testify in his behalf. In this respect he claims the court was derelict in failing to make provision for the presence of the children during the course of the trial.

The children had been made wards of the court, placed in the custody of the County Department of Public Welfare, and ordered sent to the home of relatives in another state, such action being deemed proper for their best interests. *After* commencement of the trial subpoenas were served both upon the juvenile judge and the director of the Welfare Department, commanding these officials to produce the children at the trial; each was returned with a notation to the effect that the children would not be present. It is primarily the responsibility of the parties and not the court to insure that witnesses are present at the time of trial. When it appears in a criminal proceeding that an action cannot be justly tried without the testimony of certain witnesses who cannot be present at the time scheduled for trial, the court has discretionary authority to, upon proper application, grant a continuance. Rules of Criminal Procedure, sections 295 et seq. (sections 44–1603 et seq., A.C.A.1939, now Rule 241 et seq., Rules of Criminal Procedure effective January 1, 1956, 17 A.R.S.). Under such circumstances the application must, among other things, state facts showing that due diligence has been exercised to obtain the witnesses. Rules of Criminal Procedure, section 298 (section 44–1606, A.C.A.1939, now Rule 244, Rules of Criminal Procedure, effective January 1, 1956). In the instant case the defendant made no application for a continuance, and the court, therefore, was

not called upon to exercise its discretion. As a consequence the absence of the prospective witnesses presents no valid basis for appeal.

Under the fifth assignment appellant insists that the trial court erred in permitting lay witnesses to testify as to opinions they entertained relative to his sanity, since, he contends, no proper foundation was laid therefor. In the light of the record before us this assignment is clearly without merit. The rule is well settled in this jurisdiction that in cases of this kind the testimony of a lay witness who has had an opportunity to observe the past conduct and history of a defendant is as admissible on the issue of whether he was legally insane at the time he committed the criminal act as that of a medical witness. State v. Macias, supra; State v. Voeckell, 69 Ariz. 145, 210 P.2d 972. The fact that he is a lay witness goes not to the admissibility of the testimony but rather to its weight. Therefore, the only foundation which need be laid to qualify such lay witness to testify on this issue is that he has had an opportunity to observe the defendant, as provided in this rule. The record in the instant case reflects undisputably that a foundation in strict compliance with the above rule was established in each instance where a layman was called upon to render an opinion as to the sanity of the appellant.

Appellant's sixth assignment of error is based on the ruling of the trial court in refusing to permit a witness to give his conclusion as to the attitude of the children of defendant at a time after the offense when they were visiting the funeral parlor to observe their mother's remains. The objection to the proffered testimony was that it was immaterial and called for opinion evidence. The ruling of the trial court was patently correct. The attitude of the children after the offense had no materiality whatever.

Under assignment of error No. 7 appellant complains that the trial court committed reversible error by admitting prejudicial hearsay testimony over defendant's objections. The defendant argues that the evidence complained of was the salient evidence from which the jury could find the deliberation and premeditation essential to establish first degree murder. Among other things the county attorney's opening statement to the jury said:

"The evidence will show that Johnny [5-year-old son of deceased] was dispatched to procure a soft drink so that this incident [killing] could occur in privacy."

The witness, a deputy sheriff, was questioned, and testified with reference to a conversation he had with the defendant subsequent to the killing. The witness testified:

"A. We questioned him [defendant] as to where Johnny was at the time he

shot his wife and he told me that Johnny had asked him for a quarter and he had gone to the store for some Coca-Cola and later we talked to him and—

\* \* \* \* \* \*

"Q. Go ahead. A. We went back and talked to him the next day. In fact, we asked him if there was anyone we could question regarding it that would be of help to him, if he had any friends or any witnesses we could talk to that would be his witnesses and he told us no, and then I told him we had been down to talk to little Johnny, his boy, and that his little boy had definitely —or was definite that he didn't ask his daddy for a quarter—

\* \* \* \* \* \*

"A. I told him we had talked to the little boy and the little boy was positive that he didn't ask his father for the money but that his father gave him the quarter and told him to go to the store and get the Coca-Cola.

"Q. What was his response to that? A. His response was he didn't care what the boy said."

The defendant argues that the county attorney well knew he had no evidence to support his assertion above quoted, and that this evidence was supplied by a deputy sheriff through the guise of relating a conversation he had with the defendant; where-in he related to the defendant what the little boy had said.

During the trial the defendant, on direct examination, testified in response to the questions interposed as follows:

"Q. Where was Johnny at this time? A. Early that morning Johnny came to the bed and asked me for money for pop. As is usual, I give *me* a dime and he goes and gets pop. At this time I was laying in an unfriendly position to get into my pockets and I didn't want to be disturbed so I said, 'Johnny, when I get up I will give you money for pop.' As I often do, if I am laying down, he comes and I often wait until I get up, then I give him the money. So I told him at that time, 'When I get up I will give you money for pop.' When I went out I was getting the car ready to take off, walking around, trying to think of how I could help us."

"Q. I want to know where Johnny was when this occurrence took place. A. Sometime prior to this I was getting ready to take off and then John wasn't at hand and she was worrying about John, she wanted to know where John was. John and her prior to that had gone into the basement together and after that I didn't see John. Then she started asking about John so I went out to find John and at the same time I don't know if I had blankets with me

then, I don't know, but at the same time I was trying to get the car ready to go and yet trying not to go, and I went out and John was near the car. So instead of giving John his usual dime, I guess all I had in my pocket in the way of change was a quarter and I didn't know but that would be the last bottle of pop I would buy for John so I gave John the quarter and he took off to the store for his pop."

The state contends that the testimony objected to was admitted on the theory that it was not intended to prove the substance of what the boy had said, but merely to show a conversation between the witness and the defendant. As a general proposition, where an extrajudicial statement made by a person is introduced to prove the truth of the words spoken, and where there was no opportunity to cross-examine the declarant, as here, the statement constitutes hearsay, State v. Lane, 72 Ariz. 220, 233 P.2d 437; Argetakis v. State, 24 Ariz. 599, 212 P. 372, and is inadmissible unless it qualifies as an exception.

We fail to perceive how the mere fact that the above witness and the defendant engaged in conversation was material to any issue in this case; it was the substance and not the fact of the conversation which had materiality. Therefore, the statements made by the boy could only pass the test of materiality if they were introduced to prove the truth of what he said, namely, that he did not ask to go to the store at a time just prior to the killing but that the defendant had in fact dispatched him to the store. Since there was no opportunity to cross-examine the declarant (boy) at the time the statement was made, and since the testimony fails to qualify as an exception, the evidence comes within the rule above set forth, and its admission, therefore, was error. But we fail to see how the admission of this testimony was prejudicial to the defendant when it is viewed in the light of the entire record. First, it appears that the defendant's portrayal of the "Coca-Cola" incident was substantially the same as the account thereof related by the hearsay statement of his son. The above quoted portion of the record shows that defendant testified that the boy had approached him for money for pop earlier in the day while the defendant was in bed, and that he promised the little boy would be given the money when he arose. Defendant further testified that just prior to the killing, as he was proceeding to his car to leave the family abode, he gave the boy a quarter to buy a bottle of pop, thus keeping the promise he had made earlier. It is clear that both the defendant's testimony and the hearsay statement of his son, concur on the fact that at a time immediately prior to the killing the defendant gave the boy a quarter and that the boy made no request therefor at that particular time.

Therefore, the substance of the boy's hearsay statement was at least by implication before the jury by virtue of the defendant's own testimony, and this renders the prejudicial effect of admitting the hearsay statement harmless.

Secondly, as was already alluded, the objectionable testimony bears primarily on the issue of premeditation. In resolving the issue of premeditation and deliberation the jury is authorized to take into consideration the conduct of the defendant, both before and after, as well as at the time of the homicide, and all attending circumstances. State v. Lamm, 232 N.C. 402, 61 S.E.2d 188; State v. Evans, 198 N.C. 82, 150 S.E. 678. There was a substantial quantum of evidence adduced bearing on this issue, apart from that which was erroneously admitted. The record reflects that on the same day as the killing the defendant received a restraining order incident to a divorce proceeding instituted against him by his wife, ordering him to leave the family abode forthwith; that this was his first notice of the divorce proceeding and the whole idea of it displeased him a great deal; that he was exceedingly reluctant to leave since he feared the consequences of leaving his children alone with what he termed an insane woman; that he loaded the gun and carried it during the morning prior to firing the fatal shot and was carrying this weapon in his pocket when he entered the shed where he shot his wife; and that after killing his wife he pulled her body irreverently from his car behind the office of the county sheriff and triumphantly declared "There is the son-of-a-bitch. She tried once too often to kill me and my kids". When the above testimony is viewed in the light of the entire record it would be difficult to conceive how, on the issue of premeditation, a rational jury, giving due consideration to the evidence, could have concluded otherwise than as it did even though the erroneously admitted testimony had been excluded. Accordingly, we hold that the effect of this testimony did not prejudice the defendant's rights, and its erroneous admission, therefore, does not constitute reversible error.

Defendant's final contention, by assignment of error No. 8, is to the effect that the verdict is contrary to law and the weight of the evidence. We have meticulously answered all assignments complaining of errors at law, and have found them to be without merit. The weight of the evidence was for the jury. We have carefully examined the transcript of the evidence and find therein ample evidence, if believed by the jury, to sustain the allegations of the information. Counsel for defendant so conceded except for the issue of insanity.

In view of the nature of the offense and the gravity of the penalty imposed, we have most carefully examined the record

for prejudicial error and have found none. The defendant was accorded a fair and impartial trial, and the jury was warranted in finding him guilty as charged.

· The judgment is affirmed.

UDALL, C. J., and WINDES, PHELPS, and STRUCKMEYER, JJ., concurring.