412 P.2d 36

**STATE of Arizona, Appellee,**

v.

**R. E. JACKSON and Earnest Spurlock, Appellants.**

**STATE of Arizona, Appellee,**

v.

**Jessie TILLIS and John Henry Lewis Jones, Appellants.**

**Nos. 1302–A to 1302–C.**

Supreme Court of Arizona.

En Banc.

March 10, 1966.

Rehearing Denied in 1302–B April 19, 1966.

Darrell F. Smith, Atty. Gen., Robert W. Pickrell, former Atty. Gen., Stirley Newell, former Asst. Atty. Gen., Charles N. Ronan, former Maricopa County Atty., for appellee.

Marilyn A. Riddel, Claude W. Olney, Jr., W. R. Peterson, Phoenix, for appellants R. E. Jackson and Earnest Spurlock.

Allen B. Bickart, Joseph T. O'Brien, Phoenix, for appellants Jessie Tillis and John Henry Lewis Jones.

McFARLAND, Justice.

Appellants R. E. Jackson, Earnest Spurlock, Jessie Tillis, and John Henry Lewis Jones, hereinafter designated defendants or R. E. Jackson, Spurlock, Tillis and Jones, were tried by a jury along with Clemmine Lee Jackson, also a defendant, hereinafter referred to as Clemmie Lee, for the crime of first-degree murder. The jury found defendants R. E. Jackson, Spurlock, Tillis and Jones guilty, and fixed sentence for the four at life imprisonment; and acquitted Clemmine Lee Jackson. The trial court denied defendants' motion for a new trial. From the conviction and sentence, and denials for a new trial, they appeal.

The evidence of defendants shows that one Samuel Resnick, deceased, told defendants he was dying of cancer, and because of his condition desired to take his own life. Defendant Clemmie Lee Jackson, who had previously lived in Texas, was eighteen years old at the time, and had come to Arizona to see if he could get a job. He was living with an aunt where his brother, defendant R. E. Jackson, lived. Prior to coming to Arizona Clemmie Lee's work had consisted of farm work such as chopping cotton and driving tractors. After arriving in Phoenix he placed an advertisement for work in the newspaper. The deceased, Samuel Resnick, answered the advertisement, telephoned Clemmie Lee, and asked him to come over—saying that he wanted to talk to him. Jessie Tillis, one of the defendants, went with him, but stayed in the car while Clemmie Lee went in to see Resnick. Clemmie Lee stated that Resnick said to him, " 'I am a sick man. I have the cancer—I am going to die—I want to die—the doctor can't help, and I can't stand these pains and I want you to kill me.' " Resnick informed Clemmie Lee that he wished the death to appear the result of a robbery, and offered Clemmie Lee jewelry (which he stated had a value in excess of $6,000) in exchange for this service. "He told me that I could go in business with the rings and could make a business with a car wash." He stated he told Resnick he would think about it, and contact him the next day. He went back home, but did not return, or contact Resnick the next day, but told his brother, R. E. Jackson, and the other defendants—Spurlock, Tillis and Jones, friends of R. E. Jackson—about the conversation. They asked him if he were going to do the job, and he told them no.. The next day he received a telephone call from Resnick asking him why he had not come out, and why he hadn't called. He said he told Resnick he did not want that kind of job, and that Resnick said he had another job for him, and at Resnick's request he went out to see Resnick the next morning. Spurlock and Tillis went along with him,

but they stayed in the car. Resnick told Clemmie Lee again he wanted him to kill him, and that it couldn't be with a gun because of the noise, but that it could be done with a rope. He stated that he would be walking down the street that evening, and they could pick him up.

In the early evening, the four defendants, accompanied by Clemmie Lee, were riding in defendant R. E. Jackson's car, discussing Resnick's plan. When defendants all informed Clemmie Lee they intended to talk with Resnick, Clemmie Lee requested that he be let out of the car, and this was done. The four defendants then met Resnick walking along West Glendale Avenue near his home, and picked him up. The five arrived in a remote part of the desert in north Phoenix. During this ride it was determined that a rope would be the means of taking Resnick's life. With his assistance, and two of the defendants on each end of the rope, an attempt was made to strangle Resnick, but the rope broke before this was accomplished. The rope was doubled and again wrapped around Resnick's neck. With all four defendants again pulling on the rope, this time they succeeded in causing death.

Pursuant to Resnick's instructions, defendants next removed jewelry and money from the deceased, and returned to their respective homes. All four defendants and Clemmie Lee subsequently made written confessions, later introduced in evidence at the trial.

■ This appeal was submitted in two separate briefs—one by Tillis and Jones, and one by Spurlock and R. E. Jackson. We shall first consider the assignments of error submitted by Tillis and Jones. They contend the lower court erred in denying their motion for severance and separate trials, and that the lower court abused its discretion in admitting the confessions of each of the co-defendants involved. Rule 254, Rules of Criminal Procedure, 17 A.R. S., provides:

"Trial of defendants jointly charged

"When two or more defendants are jointly charged with any offense, whether felony or misdemeanor, they shall be tried jointly, unless the court in its discretion on the motion of the county attorney or any defendant orders separate trials. In ordering separate trials, the court may order that one or more defendants be each separately tried and the others jointly tried, or may order that several defendants be jointly tried in one trial and the others jointly tried in another trial or trials, or may order that each defendant be separately tried."

We have held that the granting of a motion for severance is within the discretion of the trial court. State v. Roberts, 85 Ariz. 252, 336 P.2d 151; State v. Smith, 60 Ariz. 305,

135 P.2d 879; State v. Sanchez, 59 Ariz. 426, 129 P.2d 923. It is not an abuse of this discretion for the court to deny motions for separate trials where confessions are to be admitted when it finds none of the defendants will be prejudiced by their admission under instructions to limit the consideration of each confession as evidence applicable only to the defendant who made it.

▉ The confessions of all four defendants were essentially the same. All admitted participation in the crime. They all stated they knew Resnick wanted them to kill him before they stopped to commit the act. They all stated they met Resnick near his home at about 8:00 p. m., that Resnick got into the car, and they all went together to the scene of the crime on the desert, and that a rope was placed around Resnick's neck and all four pulled on the rope—that they had agreed with Resnick that this was the method by which he was to be killed. All stated the rope broke, was retied, and replaced around Resnick's neck, and for the second time all four pulled on the rope until they thought he was dead. All four stated defendant Tillis took the jewelry off Resnick after he was dead, and they then drove to their homes. The court in the instant case also carefully instructed the jury to limit the consideration of each confession as evidence applicable only to the defendant who made it. We hold the trial court did not abuse its discretion in denying defendants' motion for severance and separate trials.

Defendants Tillis and Jones, in their supplemental brief, contend that we should follow the rule set forth in the case of People v. Aranda, 47 Cal.Rptr. 353, 407 P.2d 265, decided since the trial of the instant case, reversing the rule set forth in People v. Andrews, 165 Cal.App.2d 626, 332 P.2d 408. In People v. Aranda, supra, defendants Aranda and Martinez were jointly charged and convicted of first-degree robbery. Martinez made a confession, but Aranda did not. The confession of Martinez was admitted in evidence. The court reversed the decision as to Martinez on the grounds that he had not been advised of his rights to counsel and to remain silent, and had not waived those rights, and that the same was inadmissible under the holding of the United States Supreme Court in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977; and that since the case was tried before the Escobedo case, the court held that Martinez's failure to object to the admission of the confession at the trial did not deprive him of the right to raise the question on appeal.

The facts in the instant case are altogether different. Each of the four defendants, in his testimony, admitted substantially the same facts as set forth in his confession. The court held that the admission of Martinez's confession, in the Aranda case, was prejudicial against him. The

state contended that inasmuch as the court had instructed the jury to consider the confession of Martinez as evidence only against Martinez it was not prejudicial to Aranda. However, the court held that since the confession linked the cases of the two defendants together it was prejudicial error to admit it. As we have pointed out, the facts in the instant case are altogether different from those of People v. Aranda, supra. In the instant case the testimony of each witness was substantially the same as the statements in his confession.

We do not say that a court in all cases should deny a motion for separate trials where confessions of defendants are to be introduced in evidence. The trial court in the exercise of its discretion should carefully examine the confessions which the state expects to introduce and in exercising its discretion determine whether the introduction of those confessions, even where the court instructs the jury to consider a confession only against the party making it, would prevent another defendant from receiving a fair and impartial trial. In the instant case, the court did not abuse its discretion in refusing to grant separate trials.

Defendants Tillis and Jones cite Escobedo v. State of Illinois, supra, in support of their contention that their confessions should not have been admitted in evidence, and cite People v. Aranda, supra, as their

authority for permitting them to raise the question for the first time upon appeal. In Escobedo v. State of Illinois, the court, in passing upon the admissibility of the confession, stated:

"We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' Gideon v. Wainwright, 372 U.S. [335], at 342, 83 S.Ct. [792], at 795 [9 L.Ed. 2d 799] and that no statement elicited by the police during the interrogation may be used against him at a criminal trial." 378 U.S. at 490, 84 S.Ct. at 1765.

It is clear the facts in the instant case are different and distinguishable from those in Escobedo. Defendants were warned of their rights, after which they made no request for counsel. They were not de-

nied "the assistance of counsel." Evidence also shows there were no threats or promises made, and that the statements were voluntarily given. Defendants' testimony shows that the admission of their confessions was not prejudicial error. The testimony of each of the defendants was substantially the same as the statements set forth in his confession.

The last question asked of Jessie Tillis, in his confession, was as follows:

"Now has this statement been given of your own free will and with no threats or promises being made to you, and you have been advised of your legal rights?"

The answer was "Yes." And after the statement was typed, Tillis signed it. He testified in regard to his statement:

"Q When you gave that statement to Officer Haywood, were you telling the truth?

"A Yes, sir.

"Q And all of the answers and questions in that statement are true?

"A They supposed to be, I reckon.

"Q You gave it?

"A Yes.

"Q You remember those answers and questions?

"A Yes, sir, I think I can remember them.

"Q That is true, what you said in there is true?

"A Yes, sir."

At the beginning of the statement of defendant Jones, Officer Alandar told Jones:

"Before we start Louis, I want to advise you that you have certain rights— rights to call an attorney, to get a bondsman. You also have the right to refuse to make this statement and, if you do make this statement, I want to be sure that you make it of your own free will. Do you want to make this statement?"

To which Jones answered, "Yeah, I'll make it." While Jones testified that he signed the statement he could not read or write. However, Sergeant Alandar testified that Sergeant Lake read three or four pages of the statement to Jones, which would have included the statement just quoted, after which Jones said, "You don't have to read further," and he signed the statement.

The statements of R. E. Jackson and Spurlock both contain substantially the same advice as to their rights as that given Jones. Spurlock raised the question of voluntariness of his statement or confession at the trial. A hearing was held as to its voluntariness in the absence of the jury. The only fact he presented in regard to the same was concerning what the officer had told him:

"He told me if I know anything about it, it would be best to tell it, it would go much easier."

He then said that he signed the statement because of what was told him. In answer to the question of the court as to what it meant, he stated:

"Well, I thought he would help me."

Officer Alandar, in rebuttal, denied making these statements. The court ruled that it was a voluntary statement. Spurlock does not even assign this ruling of the court as error.

Jones, in his testimony, admitted that he realized why Resnick was picked up, and what the job was; that he was the one that brought the rope out of the car, and put it on the shoulders of the deceased; that he helped pull the rope the first time when it broke; and that he tied the knot in the rope, and helped pull it the second time when Resnick was killed.

The testimony of each of the defendants Tillis, R. E. Jackson, Spurlock, and Jones is to the effect that all of them knew what the deceased was picked up for, and all participated in the killing of Resnick. Both their confessions and their testimony were to that effect. Under these facts there could not have been any prejudicial error in the admission of their confessions.

Defendants Spurlock and R. E. Jackson contend the trial court erred in failing to instruct the jury to disregard remarks of the county attorney in his final argument to the jury, in regard to time a defendant might serve if given a life sentence, and in failing to grant their motion for mistrial and their motion for a new trial based on these remarks. In reply to remarks of the attorney for Jackson, the deputy county attorney made the argument complained of in this appeal, as follows:

"MR. KARAS:

\*     \*     \*     \*     \*     \*

"Ladies and gentlemen of the Jury, bloodthirsty, the prosecution from the words of every defense counsel has been bloodthirsty, looking to put these men in the gas chamber. The prosecution has not said one word about the death penalty. The only thing that was said by my co-counsel concerning the death penalty was all of this subterfuge of these men solicited can be considered by you in determining the penalty of life or death. That is all that was said and yet from the mouths of every one of defense counsel came out the statement we were clamoring for blood. That is your province for our legislature on three occasions, on kidnapping and murder and death by an automobile has left to the Jury the province to determine a penalty.

\*     \*     \*     \*     \*     \*

"Now that we are on the subject, the penalty you can determine, I submit to

you, ladies and gentlemen, that the Governor on a life sentence is not required to pardon. The average life sentence in Arizona is ten years and we have a parole board—

\*     \*     \*     \*     \*     \*

"This has been raised. The state has just explained, and I know it is the proper statement. That is the parole board on the punishment of life.

\*     \*     \*     \*     \*     \*

"May it please the Court, counsel for the defense, ladies and gentlemen of the Jury, as I previously mentioned to you, the average sentence one serves under the life sentence is an average of ten years. Where does this average evolve from, where does it come from.

\*     \*     \*     \*     \*     \*

"Where does this average of ten years come from? It evolves from repeaters. By repeaters I mean those who would serve much more than ten years because of their past history and those who wouldn't serve ten years because of their past history before they received a life sentence as we have the five defendants here, and you put the long sentences and short sentences together, well, how many years of life sentence is served, comes out to about an average of ten years, so the defendants in this proceeding, which there

has been testimony elicited of no prior criminal background, what category would you fall in—below—if behaving properly while in prison.

"Now, again, I submit to you ladies and gentlemen that although what was said concerning the blood bath and these five piles of bones, the state does not intend to stand here and demand of you and tell you what to do concerning a penalty in first degree murder, for that, as our legislature has so ruled, is yours. It is for you to decide \* \*."

■   We have held that under the law of Arizona, in first-degree murder cases, since the jury in its discretion fixes the penalty of either death or life imprisonment (A.R.S. § 13–453), the argument of the county attorney of the probability of a defendant having to serve the penalty so fixed is one of the questions proper for the jury to consider. State v. Coey, 82 Ariz. 133, 309 P.2d 260; State v. Jordan, 80 Ariz. 193, 294 P.2d 677; State v. Macias, 60 Ariz. 93, 131 P.2d 810; Sullivan v. State, 47 Ariz. 224, 55 P.2d 312. In the case of State v. Coey, supra, we held:

"In assignment of error No. 2 it is contended that a statement made to the jury by the county attorney, to the effect that if their verdict were life imprisonment rather than death, the defendant would be imprisoned for

only a few years, constitutes reversible error based upon resulting prejudice.

Such comment is permissible in this jurisdiction. State v. Jordan, 80 Ariz. 193, 294 P.2d 677; State v. Macias, supra. In the latter case the rule was set forth that in first degree murder cases, where the jury has discretion to fix the penalty at either death or life imprisonment, it is proper for the jury to consider the probability that the defendant will actually serve the penalty should they determine the sentence to be life imprisonment. In accord with this rule it was held that the county attorney's statement alluding to such probability did not constitute error. We are apprised of no substantial reason for departing from the holding of that case, and, therefore, find that the comparable comment made in the case before us was not error." 82 Ariz. at 137, 309 P.2d at 262.

Defendants Spurlock and Jackson contend that the arguments were not permissible even under these cases for the reason that the deputy county attorney referred only to the action of the Board of Pardons and Paroles; also that he stated "The average life sentence in Arizona is ten years and we have a parole board—." However he was interrupted by counsel for Jackson, and the statement was not completed. This subject was first raised in the defense attorney's argument to the jury by his statement:

"They will have the opportunity to point out to you, according to our rules of evidence, that if a sentence of first degree murder is not death, there is a possibility of parole. However, I want to call your attention to the fact that a life sentence means a life sentence and parole can only be granted in Arizona after the minimum sentence is served.

"So, in other words, you fulfill your life sentence when you die.

"However, there is the possibility that the Governor might change the sentence 'from life to so many years to life through a commutation, that is the possibility, but that is the only possibility, would be through an act of the Governor.

"A life sentence in Arizona means a life sentence and you are not eligible for parole when you have a life sentence * * *."

■ Any change in the sentence would have to be recommended by the parole board before the governor could act. A.R. S. § 31–402. It is evident that the remarks of the deputy county attorney were invited by those of the defense attorney. We have

held that remarks invited by a defense attorney are not prejudicial error. State v. Gortarez, 98 Ariz. 160, 402 P.2d 992.

Defense counsel contend that had it not been for this argument the jury might have found defendants guilty of manslaughter. The facts of the case are such that they would have justified the submission of verdicts to the jury solely of first-degree murder, and not guilty. Each of the defendants, in his testimony, as we have set forth, admitted facts showing first-degree murder. The defense in this case was no more than a plea for sympathy of the jury, since each admitted he had assisted in the killing of the deceased in order "to do him a favor."

Arguments made by county attorneys referring to the probability of the release of a defendant if given a life sentence are made for the purpose of getting the jury to return a verdict fixing the penalty at death. In the instant case the argument was provoked by the statement of the defense attorney. The county attorney had not, and did not, even request the death penalty. The jury did not fix the death penalty. There was no prejudicial error. Judgment affirmed.

STRUCKMEYER, C. J., BERNSTEIN, V. C. J., and UDALL and LOCKWOOD, JJ., concur.