423 P.2d 90

**STATE of Arizona, Appellee,**

**v.**

**Raymond Idus HUDGENS, Appellant.**

**No. 1386.**

Supreme Court of Arizona.

In Banc.

Jan. 26, 1967.

Rehearing Denied Feb. 21, 1967.

Darrell F. Smith, Atty. Gen., Robert W. Pickrell, former Atty. Gen., Philip W. Marquardt, Asst. Atty. Gen., Dan Schimmelpfennig, Mohave County Atty., Kingman, William C. Kennedy, former Mohave County Atty., Kingman, for appellee.

Eino M. Jacobson, Prescott, Sol L. Hamburger, Phoenix, for appellant.

STRUCKMEYER, Justice.

Appellant, Raymond Idus Hudgens, was charged with the first degree murder of his wife Grace and her parents, Isaac and Mary Young. He entered plea of not guilty and not guilty by reason of insanity. From the judgments of conviction and sentence of death, he appeals.

The prosecution established these facts upon which the jury returned a verdit of guilty. On December 11, 1962, appellant went to the home of his wife's parents near Kingman, Arizona. His stated purpose was to persuade his estranged wife to accompany him to Florida. When she refused, appellant became enraged and he shot her and the Youngs, using a .22 caliber and a .32 caliber pistol. After the shooting, he ransacked the house to give the appearance that a robbery had taken place and disposed of the .22 caliber pistol by throwing it into the Colorado River at the Topock Bridge near Needles, California.

The next day at Van Nuys, California, he called the police department and, without giving his name, told them of the homicides and that a year and one-half old baby (his) in Kingman had not been cared for in over twenty-four hours. Appellant became a suspect and a warrant for his arrest was issued. Thereafter, in attempting to

locate Hudgens, the California police went to the home of his sister and, in a search of her home, discovered a note written by the appellant to his sister in which he admitted the shootings. After he was arrested, he was taken to the city hall in Van Nuys where a written statement was made in which he admitted the homicides and described, in detail, how the acts were committed. As he was returned to Arizona, he volunteered information which enabled the police officers to locate the .22 caliber pistol which he had thrown over the bridge at Topock.

After perfecting this appeal and filing the opening brief, appellant's counsel, Eino M. Jacobson, withdrew as counsel based upon a possible conflict of interest by reason of his election to the office of County Attorney of Yavapai County and Sol L. Hamburger was substituted as appellant's attorney. Three additional briefs were filed by him.

Former counsel strenuously argues that the prosecuting attorney, in presenting his summation, committed error in that he stated to the jury that a parole board was human and fallible, and if it imposed a sentence of life imprisonment defendant could be released prior to the time he could reasonably be expected to be safely returned to society and, therefore, he would be in a position to murder again. Appellant points to twenty-one jurisdictions in this country which have decided that arguments dealing with the possibility of parole are grounds for reversal. E. g., People v. Morse, 60 Cal.2d 631, 36 Cal.Rptr. 201, 388 P.2d 33.

■ We have, on the contrary, repeatedly stated that such or similar arguments were proper. State v. Coey, 82 Ariz. 133, 309 P.2d 260; State v. Jordan, 80 Ariz. 193, 294 P.2d 677; State v. Macias, 60 Ariz. 93, 131 P.2d 810; Sullivan v. State, 47 Ariz. 224, 55 P.2d 312. See also State v. Randolph, 99 Ariz. 253, 408 P.2d 397; State v. Robison, 99 Ariz. 241, 408 P.2d 29. While we might be disposed to re-examine this question in the light of the recent decisions cited, we would not reverse the conviction for this reason alone; and since we do not find other grounds for reversing the judgment, it is unnecessary to further consider the question raised.

■ As stated, the California police, while searching for appellant, went to the home of his sister and there discovered a note appellant left for her in which he confessed to the crimes. Appellant urges as error that this note was improperly admitted into evidence because it was the product of an illegal search and seizure. We express doubt that it was the product of an unlawful search or that the property of a third person obtained through an illegal search and seizure is inadmissible against an accused. See Kelley v. United States, 8 Cir., 61 F.2d 843, 86 A.L.R. 338. Irrespective, at no time during the course of the trial did the appellant make an objection that there was an unlawful search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States. Claimed error which is not supported by a proper objection will not be considered on appeal. State v. Graham, 97 Ariz. 408, 401 P.2d 141; State v. Hernandez, 96 Ariz. 28, 391 P.2d 586; State v. Cumbo, 96 Ariz. 385, 396 P.2d 11; State v. Favors, 92 Ariz. 147, 375 P.2d 260; State v. Hunt, 91 Ariz. 145, 370 P.2d 640; State v. Hudson, 87 Ariz. 162, 348 P.2d 928; State v. Lubetkin, 78 Ariz. 91, 276 P.2d 520.

In Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408, the United States Supreme Court said:

"* * * a litigant's procedural defaults in state proceedings do not prevent vindication of his federal rights unless the State's insistence on compliance with its procedural rule serves a legitimate state interest." 379 U.S. at p. 447, 85 S.Ct. at p. 567.

In State v. Graham, supra, we said the defense has the "duty of serving the 'legitimate state interest' [by] giving 'the Court the opportunity to conduct the trial without using the tainted evidence.' * * * Judges are neither omniscient nor all-knowing at all times for all purposes. It is the duty of

the defense to aid the Court by raising important state and federal claims." 97 Ariz. at 416, 401 P.2d at 147.

Trial counsel stipulated to the admission of the note into evidence. It contains some matters which might have been considered by a jury as mitigating the gravity of the offense. From this and the entire record it is apparent that the defense of this case was predicated on the theory of insanity arising out of emotional instability. Present counsel so concedes. The tactical decision to place the note before the jury constitutes a binding waiver of the Fourth and Fourteenth Amendments to the Constitution of the United States. State v. Graham, supra.

The next question presented is whether appellant's confession should have been excluded from evidence on the grounds that it was involuntary. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, determined that Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (June 22, 1964), and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (June 13, 1966), were not to be applied retroactively. The case at bar was tried and decided prior to both Escobedo and Miranda. The principles announced in those cases setting forth the standards as to the admissibility of confessions are inapplicable here.

An accused is deprived of due process of law if his conviction is founded in whole or in part upon an involuntary confession without regard to the truth or falsity of the confession, Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760, even when there is ample evidence aside from the confession to support the conviction. Payne v. State of Arkansas, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975; Stroble v. State of California, 343 U.S. 181, 72 S.Ct. 599, 96 L.Ed. 872; Malinski v. People of State of New York, 324 U.S. 401, 65 S.Ct. 781, 89 L.Ed. 1029. However, "the very integrity of the fact finding process" and "the clear danger of convicting the innocent" justified retroactive application of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205 (1964). Jackson provides that courts must concern themselves with the totality of the circumstances surrounding a confession to determine its voluntariness.

If the trial judge determines a confession is voluntary it may be admitted for the consideration of the jury. State v. Owen, 96 Ariz. 274, 394 P.2d 206. Here the trial judge first heard the evidence regarding the confession outside the presence of the jury. He then made a determination that the confession was voluntary and admitted it for consideration by the jury. In support of the trial court's finding is this testimony:

Examination of Detective Sergeant Guy R. Mowlder of the Los Angeles Police Department:

"Q When you first saw Mr. Hudgens, at about what time was that?

"A Approximately 12:30 P.M., on the 12th of December.

"Q Did he admit the killing was done by him within the next ten or fifteen minutes?

"A Yes. He did.

"Q Did he volunteer to tell you where the gun was?

"A Yes. He did.

"Q You then went to the Police Station?

"A After we went to look for the gun.

"Q Was his attitude cooperative?

"A After the first two or three minutes.

"Q After that, it was completely cooperative?

"A Yes.

"Q Now, during all this time, was he absent from your presence?

"A Never was absent from my presence. I was with him all the time.

"Q Did anybody offer him anything for his testimony?

"A No, sir.

"Q Was he threatened?

"A No, sir.

"Q Any promises made to him?

"A No, sir.

\*    \*    \*    \*    \*    \*

"Q At the time it was reduced to writing, or any time since the arrest until the time he started to write this, were any promises made to him, or was he asked if he wanted to get something off his mind, or any statements made to him to that effect?

"A The only statement to that effect was when we first got in the car, and I said, 'Don't you want to tell me, Ray, what happened?'

"And he said, 'Yes. I want to get it off my mind,' or words to that effect.

"Q And did he tell you that he requested counsel at any time?

"A No. He did not. I asked him if he wanted counsel, and he said, 'No. I can't afford it.'

"Q Was this after it was reduced to writing?

"A No. The same afternoon. After it was reduced to writing, I asked him if he wanted to have an attorney, and he said he couldn't afford one.

"I said, 'We have public defenders, or do you want private counsel?

"And he said, 'Public defender will be all right for me.' "

At the conclusion of the hearing, the trial judge stated:

"Let the record show that the statement was voluntary and that it was freely and voluntarily given, and I will, then, not require further foundation before the jury because I feel that enough has been given before the jury as to its voluntariness."

■ The appellant urges that a new trial should be granted because the court

reporter took notes during a portion of appellant's testimony without realizing that she had run out of paper in her stenographic machine. When the court's attention was directed to the mishap, the trial judge said:

"You may go back and repeat what you feel was that point where the Reporter's paper was used up."

After appellant had retraced his testimony, no further objection was made. An examination of the transcript does not suggest any break in the continuity of the testimony. Accordingly, we assume that the transcript accurately reflects what transpired at the trial.

■ Appellant urges that this Court. hold that the trial court, on its own motion, must instruct the jury that the arguments of counsel are not evidence and that failure to do so is prejudicial error. We find no merit in this contention. It is not necessary in a criminal case for the court to give an instruction upon a particular matter unless the instruction is so fundamental that the jury could not arrive at a proper disposition of the case without it. For cases in which we have held that fundamental error was committed by the failure to give instructions, see State v. Brock, 101 Ariz. 168, 416 P.2d 601; State v. Pulliam, 87 Ariz. 216, 349 P.2d 781; State v. Chee, 74 Ariz. 402, 250 P.2d 985. For cases in which we have held that the failure was not grounds for reversal, see Sullivan v. State, 47 Ariz. 224, 55 P.2d. 312; Bocchi v. State, 25 Ariz. 37, 212 P. 463; Reynolds v. State, 18 Ariz. 388, 161 P. 885. The arguments of counsel to the jury are not part of the record before this Court. We will not assume that the facts were misstated in argument or that prejudice otherwise arose unless the record is present for our inspection.

■ Appellant's present counsel complains that the court admitted evidence of other crimes committed by appellant. During the trial the victim of a robbery perpetrated by appellant testified without objection that appellant stole from him the guns which were identified as the murder

weapons. This evidence was admissible. Crimes or other conduct directly linked with the offense charged are relevant circumstances and therefore properly admitted. State v. Schroeder, 95 Ariz. 255, 389 P.2d 255, conviction reversed and remanded on other grounds, 101 Ariz. 177, 416 P.2d 974. The evidence that appellant had possession of the murder weapons was relevant and material and properly presented to the jury.

 Upon direct examination, appellant gave testimony of former crimes and other involvements with the law. This evidence established that he had a long history of maladjustment to society, numerous petty thefts and two dishonorable discharges from the Armed Services. Such evidence was obviously admissible where appellant's sanity, as here, was an issue. State v. Foggy, 101 Ariz. 459, 420 P.2d 934, and see Burgunder v. State, 55 Ariz. 411, 103 P.2d 256, where we said that every act of a party's life is relevant to the issue of sanity.

Present counsel argues extensively that appellant was deprived of a fair trial by the inadequacy of the representation of trial counsel. We said in State v. Kruchten, 101 Ariz. 186, 417 P.2d 510, that a conviction will not be held invalid unless the representation by counsel was a farce or a sham.

" 'Advocacy is a skill and art; easy to criticize, difficult to fairly appraise. Indeed a post-mortem of criminal trials, selected at random, would undoubtedly reveal flaws of varying magnitude in the trial techniques of respected members of the bar. Our profession is one in which hindsight is a meager measure of counsel's competency. Trial strategy is seldom viewed with a uniform eye.' United States v. Stoecker, supra, 216 F.2d at 52." State v. Kruchten, 417 P.2d at p. 521.

Proof of the homicides in this case is so overwhelming that when realistically evaluated no successful defense could be expected on a plea of not guilty. Defense counsel's efforts were devoted to the introduction of evidence on the plea of insanity which, while not relevant to the determination of guilt, would paint a picture of a social misfit trapped in an environment in which he was unable to adjust. Hopefully, a jury could be persuaded to exercise compassion. That the effort failed does not establish inadequacy of trial representation. Perhaps in a slightly different atmosphere or with a different jury it might have been successful.

Since this is a capital case, we have examined the entire record on appeal. We find that the claimed errors are unsubstantiated. Judgment affirmed.

BERNSTEIN, C. J., McFARLAND, V. C. J., and UDALL and LOCKWOOD, JJ., concur.